WILLIS E. WELLS v. THE BOARD OF EDUCATION OF WEST BAY CITY.

*Public buildings—Contractor's bond—Liability of public officers for materials and labor—Suretyship—Measure of damages where contractor fails to complete work and sues for balance due—Evidence—Charge to jury.*

1. Officers who contract for the erection of public buildings, and fail to require security from the contractor for the payment of labor and material claims, as required by Act No. 94, Laws

of 1883, are liable in damages, at the suit of laborers and material-men injured thereby. *Owen v. Hill*, 67 Mich. 43; *Plummer v. Kennedy*, 72 Id. 295.

2. The liability of officers to pay for labor and materials furnished for the erection of public buildings, by reason of their failure to require security from the contractor for such payment as provided by Act No. 94, Laws of 1883, is more in the nature of a suretyship than a tort, when the officers have acted in good faith, and they are not bound to wait until suit is brought against them before making such payment.

3. Where a contractor for the erection of a public building was not required to give security for the payment of labor and material claims,—both parties being ignorant of the law requiring it,—and on being thereafter requested to execute the required bond refused to do so, and made default in performance of the contract, which was completed at the expense of the other party, in a suit by the contractor for the balance claimed to be due under the contract, the defendant may deduct from said claim the amount paid for material furnished, and labor performed, for the plaintiff, and also the amount due from him for material and labor, and for the payment of which demands have been made upon the defendant's officers, who, by reason of their failure to require said bond, are personally liable for such claims.

4. Where, on the failure of a contractor to perform a building contract, the other party has a right to take possession of and complete the building, he is entitled to set off from the contract price all necessary and reasonable expenses incurred in its completion, and in a suit by the contractor he is entitled to an instruction to that effect to the jury.

5. Where a contractor had furnished certain material made especially for the building he had contracted to erect, which was unsuitable elsewhere, and the other party, on taking possession of and completing the building on the default of the contractor to complete it by the time specified in the contract, refused to receive such material, he is liable for its diminished value.

Error to Bay. (Cobb, J.) Argued October 16, 1889. Decided December 28, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Curtis E. Pierce* (*Shepard & Lyon,* of counsel), for appellant.

*James Van Kleeck* and *Hurdis M. Ready,* for plaintiff.

LONG, J.   On October 18, 1886, the parties to this suit entered into a written contract which, omitting the formal parts, reads as follows:

"That the said party of the first part agrees to furnish all materials and labor necessary to finish completed the work required in the erection of two two-story brick additions to the brick school-house in the First ward of West Bay City, Michigan, in accordance with the drawings and specifications thereof drawn by D. P. Clark, and which said drawings and specifications are made a part of this agreement, as much as if written herein.

"It is furthermore agreed by the party of the first part that the work shall be commenced immediately, and pushed forward as rapidly as consistent with good, safe construction, and as the weather will allow; that the building shall be inclosed, and the plastering done, on or before January 1, 1887, and the entire work finished, ready for occupancy, on or before March 1, 1887, and, in case of failure to complete the work at that date, he shall pay all damages sustained by the party of the second part in consequence thereof, each and every day the work is delayed beyond the time specified through the fault of the party of the first part, to be retained out of any moneys that may be due and unpaid on this contract.

"It is mutually agreed that the work shall be under the supervision of the architect, who shall have the right to visit and inspect the work, and the power to reject any work or materials not in accordance with the drawings and specifications.   And the architect shall also have the power, through the party of the second part, in case of failure of the party of the first part to rectify errors or complete the work within the contract date, to employ other parties to complete the work, at the expense of the party of the first part.

"It is furthermore mutually agreed that, if the party of the second part shall at any time desire any changes in the work, their wishes shall be conceded to and executed by the party of the first part, and the work

executed in the manner desired, without in any way violating or vitiating this contract; and, in case said changes shall increase the cost of the work, they shall be allowed for, at a fair and reasonable valuation; and, in case the work is diminished thereby, a fair and reasonable deduction shall be made from the contract price agreed upon between the party of the second part and the party of the first part.

"It is further mutually agreed that the work shall be kept fully insured, to cover the interests of both parties as they shall appear, from the moment the roof is on until the work shall be completed and accepted, the insurance to be placed and the premiums to be paid by the party of the second part.

"In consideration of the prompt and faithful performance of the work, and terms of this agreement, the party of the second part hereby agrees to pay unto the party of the first part, or his legal representatives, the sum of three thousand nine hundred and seventy dollars ($3,970.00), in manner following: Payments to be made, as the work progresses, to the amount of seventy-five per cent. of the amount of the architect's estimate, which shall be made fortnightly, and include only such material and labor as are upon the building site and in the work at the time said estimate is made, until the completion of the work to the satisfaction of the architect, and thirty days thereafter, at which time the twenty-five per cent. retained, together with all moneys due on the contract, shall be paid unto the party of the first part: *Provided,* that the work is then in good condition, and there are no claims or liens, from any source whatever, against either party, and that the drawings and specifications have all been returned to the architect."

The work was commenced under the contract in October, when the architect, finding the foundation insufficient, directed the contractor to make it broader, and for which $170 additional was to be paid. The plaintiff claims that in performing this additional work he found it difficult to procure stone; and that the architect, on account of unfavorable weather, stopped and delayed him in his work, but that he prosecuted the work diligently, and that it was not delayed through any fault of his;

and that he did not come within the provision of the contract which made him liable for delay, or that which authorized the architect to take possession and complete the job because it was not finished and completed within the time specified in the contract; that on March 9, 1887, the architect took possession of the work, and plaintiff was prevented from completing it. It is also claimed that when the architect took possession the work was nearly finished and that the costs of completion did not exceed $600. The work and material, it is claimed, that were put in the building up to that time by plaintiff amounted to $3,573.47, and the plaintiff had received $2,600. The suit was brought to recover the balance under the contract over and above the amount paid, and the costs of completion. Plaintiff had judgment for the sum of $675.

It appears that the plaintiff, in making the estimate of the amount he had expended upon the building before the architect took possession, included therein the sum of nearly $1,000 for work and material for which he had not paid. The defendant sought to show that of this indebtedness it had paid, after it took charge of the work, about $386.57, for brick, lime, hardware, and lumber, and that the balance of plaintiff's said indebtedness still remained unpaid; that the creditors of the plaintiff were looking to the officers of the defendant and the defendant for the payment of such demands; and that a suit was then pending in the circuit court of Bay county to recover from such officers the sum of $108 of such indebtedness. The court refused to receive evidence upon this subject, and held that the defendant could not gain any advantage by reason of such payments, or from the indebtedness of the plaintiff remaining unpaid.

The defendant also attempted to show the cost of completion of the work, and, in establishing the cost and

expense, made proofs of the items of labor and material procured and paid for by it, among such items being one of $106, which defendant had paid for material to H. & H. S. Lewis. This was objected to, for the reason that it was not included in the bill of particulars of the defendant's set-offs. This was excluded by the court, and the defendant, though moving to amend its bill of particulars by inserting this item, was not permitted to do so.

It appears that, before the architect took possession of the work, the plaintiff had made a contract with Mr. Clark to furnish the material and put the slate on the roofs for $160. At the time the defendant took charge of the work a portion of the slate had been put on, and Clark had all the slate on the ground, for its completion. The plaintiff paid Clark nothing upon the contract; and the defendant, after it took charge, arranged with Clark to complete his contract, and, after its completion, paid him $160, the full contract price. Defendant sought to set this amount off, but the court held that for all the work done by Clark while plaintiff was in possession the defendant was liable to the plaintiff in this action, even though the defendant had paid Clark for the work.

The plaintiff also claimed on the trial that he had procured certain mouldings for the building, and that, owing to their design, he was unable to make other use of them, and sold them for the sum of $25, they having cost him $83.75. The defendant claimed that under the declaration the plaintiff was not entitled to include this item as a part of his damages. The court held otherwise, and admitted the evidence. Substantially, the foregoing are the claims of the parties.

The errors claimed by defendant are as follows:

"1. That the defendant's evidence should have been

received, showing the amount, paid by it upon the indebtedness contracted by plaintiff for material and labor upon the said building, and the defendant should, in said action, in arriving at plaintiff's damages, have been allowed the benefit of such payments.

"2. That the court should not have excluded the evidence of defendant, offered for the purpose of showing that a suit had been brought against the officers of the board of education to recover the sum of $108 of the indebtedness contracted by plaintiff, and that defendant's evidence should have been received, showing the indebtedness of plaintiff still remaining unpaid, and that those to whom it was owing were demanding payment from the defendant and its officers.

"3. That defendant's evidence showing that material was purchased by it from H. & H. S. Lewis, and used in the completion of said building, should have been received.

"4. The defendant was entitled to have plaintiff's claim of damages reduced by the full amount paid by it to Clark.

"5. The court should not have admitted testimony showing that plaintiff was damaged by reason of certain material, procured by him for use in said building, having been disposed of by him for a price less than its value, and erred in submitting this question to the jury as one of the elements of plaintiff's damage in the case.

"6. That the charge of the court left the jury without any proper instructions relative to the measure of plaintiff's damages, if the jury should find that the defendant's action in taking charge of the building was not wrongful."

Upon this question the court charged the jury:

"Even in that case, the defendant would have to pay Mr. Wells something, and, to ascertain how much they should pay him, you will have to allow Mr. Wells the value of what he has done. That you must ascertain from the testimony. Estimate it according to the contract price. For example, if he had done half of the labor, half of the contract price; or three-quarters, or nine-tenths, allow him three-quarters or nine-tenths of the contract price, as the fact may be, and add to that any material that he furnished and that was used,—everything that he did or furnished that the defendant has

had the benefit of. Anything that he furnished, and they had the benefit of, of course, they should pay him for. From that amount deduct the sum that it would take to finish and complete the contract. That sum that you have found, that is the amount due him for what he had done and furnished. Of course, that would be money that was due him from the defendant, so far as it had not been paid already. Now, from that you will have to deduct the amount that it would take to finish the building in accordance with the contract; also, the damage that the defendant suffered from not having the building to use."

Defendant's counsel offered to show on the trial that at the time this contract was entered into the officers of the board of education were not aware of the provisions of Act No. 94, Laws of 1883, making it the duty of the board contracting on behalf of the school-district to require security by bond for the payment by the contractor, and all subcontractors, for all labor performed or materials furnished in the erection of such buildings; that subsequent to the making of the contract for the erection of the building, their attention being called to the provisions of this act, they called upon the plaintiff, and demanded that he give the required bond, which he refused. This the court excluded.

We will discuss the points made by defendant's counsel in the order in which they are presented. We may discuss the first two points together, as to whether the defendant could be allowed to deduct from plaintiff's claim the amount it paid to material-men for material furnished plaintiff, and also for material actually furnished plaintiff, and labor performed, and not yet paid for, claim being made by the material-men upon the officers of the board for such payment. By the provisions of the statute above referred to, the officers are made personally liable for such materials upon failure to take the requisite bond. The provisions of this statute were

not known to the officers at the time of the execution of the contract; but, as soon as they became aware of its existence, they made demand upon plaintiff for its execution and delivery to the board, which the plaintiff refused.

It was held in *Owen v. Hill,* 67 Mich. 43 (34 N. W. Rep. 649), that upon a failure to take such bond the trustees were liable in damages, at the suit of a material-man injured thereby. This ruling was upon an equal division, as the Court was then constituted. At the October term of this Court, 1888, that question again came before this Court in *Plummer v. Kennedy,* 72 Mich. 295 (40 N. W. Rep. 433), and the doctrine in the case of *Owen v. Hill* was fully approved by a majority of the present Court. The rule is therefore settled in this State that the trustees are so liable to material-men and laborers for a failure of the board to take such bond; and it became the duty of the contractor to give the bond when required by the board. It was the purpose of this statute to give to laborers and material-men some security for the labor performed or materials furnished by requiring the bond, which is to be held by the board for the use of such parties, and the statute gives the parties interested a right of action upon the bond. The fact that the bond was not given was in the first instance as much the fault of the contractor as of the board. Neither knew that it was required. When the bond was finally demanded the contractor was in fault in not furnishing it. The officers are, under the decisions of this Court, personally liable to material-men and laborers; that is, the material-men and laborers, not having the bond for their protection, may look to the officers personally. Plaintiff, however, claimed that, notwithstanding this, and though the officers are compelled to pay for what he has contracted for and had, and used in the building, and for which he has

never paid, yet he should recover the full price from the defendant.

Defendant offered to show that the plaintiff was wholly irresponsible, which the court excluded. By the terms of the contract, the plaintiff was to complete the building by March 1, 1887; and, failing in this, the architect was authorized to take possession, and complete it. March 9 the architect took possession, and the plaintiff's action is to recover what is justly his due by the terms of the contract. The action is an equitable one, plaintiff having failed to complete his contract; and it would be neither equity nor justice to allow him to recover from the board of education for an amount which he has never paid nor expended, and for which it is claimed he is wholly irresponsible, and at the same time compel the officers of that board to respond to the very parties, and to the same amount in which he is indebted, for labor and material. The liability of such officers, when acting in good faith, is more in the nature of a suretyship than a tort. Whatever the officers, as members of the board, under such circumstances, are bound to pay, or whatever the board, as such, has paid, for labor and materials which the plaintiff was legally bound to pay, he cannot recover in this action.

In *Smith v. Shelden*, 35 Mich. 48, it was said:

"Now, a surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities, as is often the case where notes are given or bonds taken."

The court was in error in refusing to allow the defendant to give evidence of the fact that its officers were

not advised of the existence of this statute at the time of making the contract, and that they afterwards demanded the bond, which plaintiff refused to execute. The court should also have permitted the defendant to show the amount and character of the material furnished to plaintiff, and labor performed by him, by material-men and laborers, which remained unpaid, and which the officers of the defendant had paid, or for which they were legally liable. These officers are not bound to wait until suit is brought against them before making payment. Any payment made would be for the benefit of plaintiff, and this and any other sum deducted from the amount of his damages in this action, which he was legally liable for to material-men and laborers, and for which, under the circumstances, the officers of defendant were holden, would only be a matter of equity and justice. Even by the terms of the contract, it would seem that there were to be no claims or liens against either party at the time the work was to be fully paid for. It is evident that the parties themselves must have regarded this clause in the contract as one which called upon the contractor to pay for all labor and material before the 25 per cent. which was kept back upon estimate as the work progressed was to be paid.

The court should also have received the evidence offered to show the bill of material purchased from Lewis by the defendant. The plaintiff could only claim the contract price, less what had been paid him and what it cost to complete the building, and the other deductions spoken of. These materials were used in the completion of the building. The defendant also had the right to have deducted from plaintiff's claim what it paid Clark for the slating. We see no error in the ruling of the court under the fifth claim of defendant. If the defendant refused to receive the material, it having been made

especially for that building, and unsuitable elsewhere, the plaintiff should be allowed the diminished value.

The court should also have presented the defendant's theory of the case to the jury, and directed them as to the measure of damages, if the defendant had the right to take possession of the building at the time it did, and complete it. Under any circumstances, the defendant was entitled to set off from the contract price all the necessary and reasonable expenses incurred in its completion.

For the errors pointed out the judgment of the court below must be reversed, with costs, and new trial ordered.

The other Justices concurred.