## HUEBNER v. NIMS.

SCHOOL TRUSTEES—CONTRACTOR'S BOND—SURETIES—LIABILITY OF TRUSTEES.

Where the trustees of a school district required a contractor for building a schoolhouse to furnish the bond provided for by 3 Comp. Laws, §§ 10743–10745, and in good faith approved of the sureties, who justified that they owned sufficient property in Michigan, the trustees were not liable to one who furnished the contractor material, though the sureties were residents of Canada, and owned no property in this State.

Error to Huron; Beach, J. Submitted February 18, 1903. (Docket No. 99.) Decided April 7, 1903.

Case by Julius J. Huebner against Charles S. Nims, Nelson P. Arnold, Bela W. Jenks, Matthew D. Wagner, and Joseph J. Lescyzinski for failure to exact an adequate statutory bond. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*James D. May* (*Robert T. Speed*, of counsel), for appellant.

*Charles L. Hall* and *John F. Murphy*, for appellees.

MOORE, J. This is an action brought by plaintiff against the five defendants as individuals to recover

$1,361.67, the balance claimed to be due him from the firm of Ballman & Wellman, who were the contractors for building a schoolhouse. The defendants were the five trustees of the school district. The judge directed a verdict for defendants. The case is brought here by writ of error.

It is claimed the defendants are liable because they failed to take a bond or bonds with adequate sureties for the protection of the materialmen, as required by 3 Comp. Laws, §§ 10743–10745. It is not claimed the bonds were not for a proper amount or in proper form, but it is claimed the sureties were nonresidents of the State, and that the trustees had such knowledge of their not having any property in the State that they ought not to have accepted the bonds, and are personally liable to the materialmen,— citing *Wells* v. *Board of Education*, 78 Mich. 260 (44 N. W. 267), and other cases; and that their good faith in taking the bonds would not relieve them from liability.

Plaintiff's claim is made up of a balance of $676.12 for materials and factory work furnished by him, and a claim of $685.55 for materials furnished by the Detroit Lumber Company, which claim was assigned to him. The record discloses that on or before March 10, 1900, the school board let the contract to Ballman & Wellman for the construction of the schoolhouse. Before the contract was signed, the contractors were required to give bonds. These bonds were executed by Ballman & Wellman, as principals, and by John Jay and Charles Baxter, as sureties, before Mr. Eugene Clarkson, a notary public and attorney at law at Detroit, Mich., on March 10, 1900, the sureties justifying under oath that they resided in Windsor, Ontario, but owned property in the county of Wayne, Mich., sufficient to fully cover the amount of the bonds. After being so executed, the bonds were mailed to the board of trustees at Harbor Beach for their approval. The trustees, before taking action on the bonds, sent Matthew D. Wagner, the director of the district, to investigate the matter. He went to Port Huron, and called

on the architect of the building, and together they went to the office of a lawyer of that city, who had drawn the contract and bonds. A question was raised between Mr. Wagner and the lawyer as to whether the sureties owning property, as they had sworn, in the county of Wayne, made the bond signed by them a valid bond, though they were not residents of the State. Mr. Wagner was advised that, as the sureties had qualified that they had property in the county of Wayne, though they lived in Canada, their bonds were perfectly good, and the board would only do its duty by accepting them. Mr. Wagner then saw the lawyer before whom the bonds were signed, and was assured by him that the bonds were executed before him, and that the sureties justified before him, as stated in the bonds.

Mr. Wagner, upon his return to Harbor Beach, reported to the board what he had learned, and advised the board that he thought it safe to accept the bonds. The board voted to do so, and March 15th signed the contract, and sent a copy of it to the contractors. On the 16th of March Mr. Wagner wrote the sureties in the name of the school district, directing his letter to them at Windsor, calling their attention to the fact that it had the two bonds, and that it had been assured by Mr. Clarkson, the notary public, that the sureties affirmed they owned "unincumbered property in Wayne county to the value of the bonds, so we have accepted you as bondsmen. Is Mr. Clarkson's understanding of the matter correct?" The contractors entered upon their work on the 19th of March. Mr. Baxter replied to the letter of March 16th under date of March 20th, saying the notary had made a mistake, "as I have no property in Wayne county, but have property to the value in Windsor, Canada." The bonds and contract were pasted in a book, and the letter of March 20th was pasted under them in the same book.

Some time the last of June or early in July the plaintiff made investigation into the financial standing of the contractors. At this time he had furnished about $600 worth

of materials and work, and had been paid about $300. Afterwards payments were made to him amounting to about $1,100. He had an interview with the architect at Port Huron, who suggested to him he had better go to Harbor Beach and look the papers over, and satisfy himself as to the responsibility of the contractors. He went to Harbor Beach, and the book in which the contract and bonds and Mr. Baxter's letter were pasted was given to him by Mr. Wagner, and he made such examination of them as he desired. He admitted on the trial that he saw the bonds and the contract, but claimed he did not look over any other papers on that page. At the time this suit was brought, the school district had paid the contractors all but about $30 of the contract price. The plaintiff had not attempted to collect the balance due him from the contractors or from the makers of the bond.

The first question to be decided is, Are the defendants liable because of a failure to comply with the statute in taking the bonds which were taken by them? The cases cited by plaintiff of *Owen* v. *Hill*, 67 Mich. 43 (34 N. W. 649); *Plummer* v. *Kennedy*, 72 Mich. 295 (40 N. W. 433); *Wells* v. *Board of Education*, 78 Mich. 260 (44 N. W. 267); and *Weinberg* v. *Regents of University*, 97 Mich. 246 (56 N. W. 605),—were all cases where no bond in fact was given. In the case before us the board of trustees undertook to comply with the provisions of the statute, and, before accepting the bonds, sought counsel as to their duty. It was not until after the bonds had been accepted, and the contract signed, that the board learned from one of the sureties that his property was not in this State, but in Windsor, he at the same time saying he had property of the requisite value in Windsor. The record is clear, we think, that the board acted in good faith, meaning to comply with the provisions of the law. In *Owen* v. *Hill*, 67 Mich. 43 (34 N. W. 649), Justice CHAMPLIN, who wrote the opinion, in which it was held the trustees would be liable for not taking the bond required by the statute, used the following language:

" The mere act of requiring a bond is a ministerial act involving no discretion, and consequently no judicial functions. In addition to requiring the bond, the law requires that they shall first fix the amount in which the bond shall be given, and, second, they shall pass upon the sufficiency of the sureties. These two requirements doubtless involve in a limited measure the exercise of judicial functions. I do not think these functions are so connected with the ministerial duty of requiring the bond as to be inseparable, nor do I think that the performance of one involves the exercise of the other. In neglecting to require a bond at all, the board neglected the performance of a plain ministerial duty imposed by statute, and it is well settled that, when the law casts any duty upon a person which he refuses or fails to perform, he is answerable in damages to those whom his refusal or failure injures. * *

" But whether the whole transaction of requiring the bond and its approval be looked upon as involving the exercise of judicial functions, I am still of opinion that defendants would be liable for an entire neglect to attempt the performance of the duty required by statute. It is a general principle that courts or officers exercising judicial functions shall not be held liable for any error of judgment. There is a distinction, however, between cases where parties invested with discretionary authority exercise it to the injury of an individual, and where they neglect to exercise it at all."

This indicates very clearly that, while the board might be liable for neglect to act at all, if they had in good faith attempted to comply with the statute there would be no liability. There is no safety in any other rule. It is for the board to determine the amount for which the bond shall be given, and the sufficiency of the sureties. In deciding these essentials it is acting at least *quasi* judicially, and for an error of judgment its members are not to be mulcted in damages. In *Reed* v. *Conway*, 20 Mo. 22, it is said:

"I do not think it necessary to cite further authorities to support the general proposition I laid down, viz., that where a ministerial officer does an act as a judge, or does a judicial act, which is within his power and jurisdiction, then, although an injury may arise to another, yet such officer is not liable to a civil action by the injured party,

unless it be proved that the act was willful and malicious. The cases from Denio go further, and exempt such officer thus acting from all liability to civil action, however malicious or corrupt his motives. Without agreeing to or dissenting from the views of the court in the two cases last cited, the authority of the highest courts in England and our country will bear out the proposition that the ministerial officer, acting judicially within his jurisdiction, is not liable, unless his acts be willful and malicious."

See the many cases cited therein; also *Edwards* v. *Ferguson*, 73 Mo. 686; *Chamberlain* v. *Clayton*, 56 Iowa, 331 (9 N. W. 237, 41 Am. Rep. 101), and cases there cited.

Having reached this conclusion, it is not necessary to say whether defendants are relieved from liability because the plaintiff, before furnishing the material and doing the factory work for which he sues, knew what bond had been taken, and who the sureties were, and that they were nonresidents of the State. Nor is it necessary for us to decide whether plaintiff was bound to make an effort to collect his claim against the principal contractors before bringing this suit.

Judgment is affirmed.

The other Justices concurred.