SMITH *v.* HUBBELL.

142   637
149   ¹685

142   637
s151   60

1. LIBEL—ACTION—EVIDENCE.

In an action for libel plaintiff may show that he has children, that he went to the place of his residence a poor man and without outside assistance has built up a profitable business.ᵈ

2. TRIAL—EXAMINATION OF WITNESSES—OBJECTIONS—QUESTIONS RAISED.

An objection to a question as incompetent does not raise the point that to permit it to be answered would admit secondary evidence without a proper foundation.

3. LIBEL—MALICE—EVIDENCE—SUBSEQUENT PUBLICATIONS.

In an action for libel in defaming plaintiff in his office of village attorney and in his profession as an attorney at law, an article published eight months later, opposing his candidacy for prosecuting attorney and containing an express reference to his official acts previously criticised, is admissible to show malice, against the objection that it is too remote.

4. MUNICIPAL CORPORATIONS—PUBLIC BUILDINGS—CONTRACTORS' BONDS—LIABILITY OF OFFICERS.

The omission of a village council erecting a public building to require and take from the contractor the bond prescribed by section 10743, 3 Comp. Laws, renders the members liable to materialmen for damages sustained by them through failure of the contractor to pay them for materials furnished for the building.

5. SAME—OFFICERS—CLAIMS AGAINST MUNICIPALITY—ALLOWANCE—INTEREST OF OFFICERS.

Members of a village council, who by reason of the neglect of a statutory duty are personally liable for a claim for materials furnished for a village hall, are legally disqualified from voting on the allowance of the claim when presented against the village.

6. SAME—VILLAGE ATTORNEY—ALLOWANCE FOR SERVICES.

The claim of a village attorney for his services in applying for a mandamus against the president and clerk to compel payment of a claim against the village allowed by the council, is not a valid claim against the village, where the councilmen at whose request the services were rendered were personally liable for the original claim.

7. LIBEL—ACTION—TRIAL—REQUEST TO CHARGE—INSTRUCTIONS GIVEN.

In an action by a village attorney for libel, a request to charge preferred by defendant that, when an attempt was made to enforce payment of a certain claim against the village, it was the attorney's duty to make a full investigation and advise the council that the claim was invalid, if it was so disclosed, *held*, sufficiently covered by an instruction given that if plaintiff knew, or on investigation might have discovered, that the claim was invalid, then his services in attempting to enforce payment thereof would not constitute a legal charge against the village.

8. MUNICIPAL CORPORATIONS—VILLAGE ATTORNEY—DUTIES—ORDINANCES.

A village ordinance providing that the village attorney shall prosecute and defend actions by or against the corporation or any officer thereof who may have incurred any penalty or forfeiture under the charter and ordinances, or by breach of the conditions of any official bond, when directed by the council so to do, does not, as a matter of law, absolutely disqualify such attorney from appearing against the president and clerk of the village in proceedings to compel them to issue and sign an order for the payment of a claim against the village.

9. LIBEL—ACTION—INSTRUCTIONS.

Where village councilmen were personally liable for a materialman's bill which they allowed as a claim against the village, and plaintiff, as village attorney, at their request sought to compel the president and clerk to issue an order for the payment of such claim, it was error for the court, in an action for libel consisting of publications criticising plaintiff's act in presenting a claim against the village for his services in such proceeding, to refuse to charge explicitly that the village trustees were personally liable on the materialman's bill, and for that reason their allowance of the bill was invalid, and the attempt to bind the village for plaintiff's services was futile.

10. PERJURY—FALSE OATH—INTENT.

A village attorney does not commit perjury in swearing to a bill against the village for services, performed at the instance of the village council, to compel the village president and clerk to execute and sign an order for the payment of a claim against the village, which as a matter of law is not a valid claim against the village, and on which the members of the

council are individually liable, provided he believes in good
faith that his bill for services is a legal claim against the vil-
lage.

11. LIBEL—STATEMENTS LIBELOUS PER SE.

Publications concerning plaintiff, as attorney for a village,
stating that he is a pettifogger and incompetent, criticising his
conduct for filing a claim against the village for services in a
mandamus proceeding to compel the village president and
clerk to execute and sign an order for the payment of a claim,
for which the village was not liable, and charging plaintiff
with dishonesty and perjury in swearing to his claim, are
libelous per se.

12. SAME—DAMAGES—EVIDENCE.

Where, in an action for libel, no evidence is offered to prove
pecuniary loss, plaintiff is not entitled to recover for injuries
to his business.

Error to Lapeer; Smith, J. Submitted January 5,
1906. (Docket No. 13.) Decided January 23, 1906.

Case by Herbert W. Smith against Albion W. Hub-
bell for libel. There was judgment for plaintiff, and de-
fendant brings error. Reversed.

*Elmer Shumar* and *R. L. Campbell*, for appellant.

*Geer, Williams & Halpin*, for appellee.

HOOKER, J. The defendant has appealed from a judg-
ment against him, in an action of libel. He was the
owner and publisher of a newspaper in the village of Im-
lay City, and published some editorials reflecting upon the
plaintiff, who was village attorney. The first of these
was under the caption, "An Imlay City Graft," and
grew out of the following facts: The village council let
a contract for the building of a village hall, without re-
quiring the statutory bond to protect materialmen
and laborers. The contractors were paid a large propor-
tion, perhaps all, of the contract price, while the work
was unfinished to a substantial degree, and some mate-
rialmen presented claims to the council. These claims
were allowed by the council; four aldermen voting in
favor of allowance, and two against it. The village presi-

dent and clerk refused to give orders for the amounts
allowed. Thereupon the council passed a resolution di-
recting plaintiff to commence mandamus proceedings
against the president and clerk to compel them to sign
the orders. This was done, and the circuit judge
denied the writ. Thereafter plaintiff presented a bill to
the council for about $70 for his services in the mandamus
case and one or two other matters connected with the
transaction. The bill was allowed. The following quo-
tations from its editorials will serve to show the substance
of defendant's alleged libel:

"AN IMLAY CITY GRAFT.

"OUR VILLAGE DADS APPARENTLY WANT TO FOLLOW<br>THE LATEST FASHIONS.

"At the meeting of the common council Tuesday even-
ing our village attorney, Herbert W. Smith, presented a
bill for his services in the mandamus proceedings recently
commenced against the village president and clerk to com-
pel them to sign an order for the payment of a claim
against George D. Hulburt & Company, and which the
village of Imlay City was not in any sense responsible for.
In his decision the circuit judge said that the village is
not liable for the costs incurred, and the contention of the
Record is that the account of Mr. Smith is for work done
for private citizens, and is no more a claim against the
village treasury than any other private account. We
give herewith an itemized statement of the account, to-
gether with the accompanying affidavit of Mr. Smith as
presented to the council: [Here followed an itemized
statement of the account.]

"'STATE OF MICHIGAN, } ss.
    County of Lapeer.    }

"'Herbert W. Smith, being duly sworn, says the services men-
tioned in the above statement has actually been performed for the.
village of Imlay City and that the sums charged therefor are reason-
able and just, and that to the best of his knowledge and belief no
set-off exists nor payment has been made on account thereof except
such as are indorsed or referred to in such account.

"'HERBERT W. SMITH.

"'Subscribed and sworn to before me this 1st day of December,
A. D. 1903.                              "'ELMER SHUMAR,
                 "'Notary Public, Lapeer County, Michigan.'

"Now, as Mr. Smith knew before making that affidavit that not one cent of the bill was a valid claim against the village, we would like to inquire if he did not commit perjury when he made the affidavit. With the knowledge that the bill was not a valid claim against the village, the council by a vote of 4 to 2 allowed it.

"The vote of the members of the council on this looting of the village treasury is as follows: Yeas—Trustees Rathsburg, Taylor, Johnson, and Egglestone. Nays—Trustees Ryman and Large.

"Mr. Smith apparently considers our council easy picking, and proposes to work the graft he has for all there is in it. Ever since he has held the position of village attorney he has, on points raised, advised our council in such a way as to make legal complications and probable lawsuits, and thus make more work and also more fees for himself. His actions as village attorney convinces many thinking people that he is either wofully incompetent for the place or is a consumate pettifogger, and the wonder is that the members of our village council are chumps enough to be misled by such advice. It is to the credit of president Doty that he refuses to sign the order for the payment of this bill, and in this position he deserves the backing of all citizens who favor honesty and economy in the financial affairs of our village."

The second editorial appeared soon after:

"NOW WOULDN'T THIS JAR YOU?

"On Tuesday afternoon we received through the post-office the following communication, which is self-explanatory:

"'IMLAY CITY, December 8th, 1903.
"'Mr. ALBION W. HUBBELL,
        "'Editor Imlay City Record,
                "'Imlay City, Mich.
"'*Dear Sir:* You are hereby notified to publish a retraction of the statements made by you in the issue of your paper of December 4th, 1903, a copy of which is hereto annexed and marked "exhibit A."
                "'Yours truly,
                        "'HERBERT W. SMITH.'

"'Exhibit A' referred to is a clipping from last week's Record containing the article headed 'An Imlay City Graft.' After carefully reading the article again, we fail

to find anything in it to retract, as we consider it a plain statement of fact expressed in very mild language. A correction in the spelling of a word is called for, as we ob-serve an 'm' was omitted from the word 'consummate,' and if necessary we are willing to apologize to our subscribers for this faulty proof reading; but as Mr. Smith is not a subscriber to the Record we consider this little omission is none of his business. Mr. Smith's letter has been placed in a frame and hung among the works of art that adorn the walls of our editorial sanctum."

The articles sufficiently show the claim of the defendant as to the plaintiff's connection with the transaction. It is fair to say that the plaintiff claimed to be unaware that a bond was required, that he and the members of the council did not intentionally omit to comply with the statute, that they thought that justice required the allowance and payment by the village of the claims presented, and that the council had authority to allow them; that plaintiff believed and advised the council that a mandamus proceeding was the proper one to test the question. The defendant's counsel have alleged many errors. We will endeavor to discuss the important points, giving the necessary facts in connection with the respective questions.

Upon the trial, the plaintiff was asked, "Have you any children?" He answered that he had a girl and a boy. Again he was asked:

"What property did you have when you settled in Imlay City?

"*Mr. Campbell:* Now, your honor, we object to all this line of examination as not admissible.

"*Mr. Williams:* I believe it is competent. This young man went to Imlay City poor, after working himself through the school, and by his industry has built up by his own efforts a business there that has been injured by this defendant.

"*Mr. Campbell:* We object to that statement.

"*The Court:* I think you may take it. (Exception for defendant.)

"*A.* I did not have any property, and did not have any assistance from any outside source since that time."

In aggravation of actual damages, a plaintiff may prove

his own rank and condition in life. Thus in *Morey* v. *Morning Journal Ass'n,* 123 N. Y. 207 (9 L. R. A. 621), it was held competent for a plaintiff to show that he was a married man, as bearing upon the hurtful tendency of the libel and the general damage to which he was exposed. In another case it was held proper to permit a plaintiff, in an action of libel based upon a charge of immoral conduct, to prove that she had a family of young children. *Enos* v. *Enos,* 135 N. Y. 609; Townshend on Slander and Libel, § 391; *Myers* v. *Malcolm,* 6 Hill (N. Y.), 292; *Eastland* v. *Caldwell,* 2 Bibb (Ky.), 21; *Hayner* v. *Cowden,* 27 Ohio St. 292; *Bennett* v. *Hyde,* 6 Conn. 24. See, also, *Press Publishing Co.* v. *McDonald,* 63 Fed. 239 (26 L. R. A. 531). This case contains an exhaustive discussion of the question, showing that the rule prevails in Massachusetts, Connecticut, Pennsylvania, Illinois, Virginia, Kentucky, West Virginia, Ohio, and Washington. *Klumph* v. *Dunn,* 66 Pa. 141. See, also, 3 L. R. A. Cases as Authorities, 901, citing *Morning Journal Ass'n* v. *Duke,* 128 Fed. 657, approving *Press Publishing Co.* v. *McDonald.*

Referring to the claims presented to the council by materialmen, counsel asked:

"*Q.* How were the bills presented — in whose name? (Objected to as incompetent. Objection overruled. Exception for defendant.)

"*A.* Why, the bills were presented, as I found them in the files of the clerk; some of them simply Selden Newberry & Son."

It is now said that this was the admission of secondary evidence without a proper foundation. It is sufficient to say that the objection contains no suggestion of such a point and we cannot consider it.

The following article was admitted in evidence, in opposition to the objection that it was too remote from the time of publication of the alleged libel, incompetent, and immaterial:

"Herb Smith is putting forth almost superhuman ef-

forts to secure the republican nomination for prosecuting attorney of this county. It is to be hoped that before giving him support for the nomination every person will acquaint himself with the record Herb made as village attorney of Imlay City and ask himself if similar methods are desirable in the office of prosecuting attorney. 'By their fruits ye shall know them.'"

It was published August 26, 1904, while the alleged libels were published in December, 1903. The plaintiff claimed that it was admissible to prove malice, and, in sustaining this claim, we think that the trial court did not err. 2 Current Law, p. 724; 4 Current Law, 427; *Simons* v. *Burnham*, 102 Mich. 189; *Long* v. *Tribune Printing Co.*, 107 Mich. 207; *Owen* v. *Dewey*, 107 Mich. 67; *Thibault* v. *Sessions*, 101 Mich. 279. This article contained an express reference to his official acts previously criticised.

Error is assigned upon the refusal to give defendant's fifth and seventh requests.

" 5. I charge you that as the plaintiff, at the time of the allowance of this Michaels bill, was the attorney for the village, it was his duty, when an attempt was made to enforce payment of this bill, to make a full investigation of the matter, and that, if a full investigation would have disclosed to the plaintiff that the bill was an invalid one, then it was his duty to so advise the village council. * * *

" 7. As the ordinance under which the plaintiff held the office of village attorney provided that the village attorney should represent the village officers in all legal proceedings, it became the duty of the plaintiff to appear in behalf of the president and clerk in any proceedings that might be instituted to compel them to issue and sign the order in payment of the Michaels bill, and his services in appearing in opposition to those officers did not and would not constitute a legal charge against the village; he being absolutely disqualified by his office to appear against them."

It is true that the omission by the council to require and take the bond was contrary to law. It is also undeniable that this omission made the members liable to material-

men for damages. 3 Comp. Laws, § 10743; *Owen* v. *Hill*, 67 Mich. 43; *Plummer* v. *Kennedy*, 72 Mich. 295; *Wells* v. *Board of Education*, 78 Mich. 260; *Staffon* v. *Lyon*, 104 Mich. 249. Being liable personally, it is evident that the councilmen who thus omitted the duty and were liable to Michaels had a direct pecuniary interest in the allowance of Michaels' bill, and were legally disqualified from voting to allow it. *Stockwell* v. *Township Board of White Lake*, 22 Mich. 341; *Wilson* v. *Township Board of Burr Oak*, 87 Mich. 240; *Locke* v. *Wyoming Township Highway Com'r*, 107 Mich. 631. A question regarding the validity of such allowance was raised by the president and clerk. Thereupon the council applied to the plaintiff for advice. It is claimed that he advised them to test the question by applying for a mandamus, and they directed him to do so, and the application was made by and on behalf of the village through its attorney, not on behalf of a private person against the village. The council and the executive officer were in a dispute about the validity of this action. If all were honest in their convictions and action, the dispute was one which it was proper to have settled. The only questions in that regard are whether the council should, or lawfully could, treat this as a proceeding for the village, instead of themselves, in view of their personal interest in payment, and whether the village attorney violated his duty in appearing and prosecuting the case against the president and clerk. But, if we determine both of these questions in favor of the plaintiff, we must face the further question, viz. : Was the allowance of plaintiff's bill for the services rendered in the mandamus case valid in view of the personal interest of the members of the council? We had a somewhat similar question before us in *Smedley* v. *Kirby*, 120 Mich. 253. There the mayor had employed counsel on behalf of the city to compel recognition of his right to veto a resolution passed by the council. He was successful. See *Baaer* v. *Kirby*, 118 Mich. 392. The city attorney had espoused the cause of the council and clerk.

Subsequently Smedley filed his bill for services, and to a resolution regarding it an amendment to allow $349.50 to the mayor, with which to pay his attorney fees, was offered. It was declared carried by the mayor's vote, as also was the adoption of the amended resolution. This action was sustained, upon the ground that the mayor had no pecuniary interest in the matter; it appearing that he had not bound either the city (which he had no power to do) or himself (which he was careful not to do) in hiring counsel. We are of the opinion that the village was not bound by the action of the council in either instance to pay compensation for these services, because the councilmen were disqualified by a pecuniary interest, if for no other reason.

The questions last discussed have a relation to defendant's requests. As to the fifth request, above quoted, we think that it was substantially covered by the sixth, which was given, viz.:

"6. If the plaintiff knew, or if an investigation such as he might have made would have disclosed; that the Michaels bill was not a valid claim against the village, then I charge you that his services in attempting to enforce payment of said bill would not constitute a legal charge against the village."

Section 4 of the ordinance referred to in defendant's seventh request provides:

"He shall prosecute and defend all actions which may be brought by or against the corporation, or any officer thereof, and who may have incurred any penalty or forfeiture under the charter and ordinances, or by reason of the breach of the conditions of any official bond, when directed by the council so to do."

We think the court did not err in refusing this request. Defendant's counsel say that they were entitled to have the ordinance construed; but, if that be conceded, he was not entitled to the construction embodied in the request.

Two other requests upon which error is assigned are as follows:

"8. For the purpose of this case, I say to you that Trustees Ryman, Rathsburg, and Taylor were personally liable for the amount of unpaid labor and material bills furnished George D. Hulburt & Co., including the Michaels bill, on account of their being members of the council at the time the contract was made with Hulbert & Co.; and their failure to require the bond specified in the statute (3 Comp. Laws, § 10743), and because of their interests these trustees were disqualified from voting on the question of the allowance of the bill of Michaels Bros., and the allowance of the bill by the aid of their votes was illegal, and such an allowance would in no way make the village liable.

"9. For the reason above given the passage of the ressolution authorizing plaintiff to begin proceedings against the president and clerk, by the aid of the votes of Trustees Ryman, Rathsburg, and Taylor, was invalid, they being disqualified to vote thereon by reason of their interest; and the proceedings based on such resolution were invalid so far as making the services of the plaintiff in the matter a legal charge against the village.

"10. If you find that, at the time the plaintiff swore to the bill for $69.87 and presented it to the council, he knew that the services, or any part of the services, mentioned in the bill were rendered by him in attempting to enforce payment of an illegal bill, or that those services, or any part of them, were not rendered on behalf of the village of Imlay City, then the defendant was justified in writing and publishing the article upon which this suit is based, and the plaintiff cannot recover."

This last request was given down to and including the words "Imlay City;" the court adding the following:

"Then the defendant had a right to criticise his action in presenting the bill. Now I am asked, gentlemen, to say to you by a request that the defendant had a right to publish the article, but I am not able to say that; at least, I think I am not. He had a right, though, to criticise if the bill was presented and was an illegal one — and Mr. Smith knew it was — because in that event the bill would not have been presented in good faith. But when he did criticise the plaintiff, if he did so, he must confine himself to statements of truth, and he must have made the statements that he printed in the articles he printed in good faith. Then, too, the article contains other statements than that

of perjury in connection with this bill, and it is for you, gentlemen, to say, rather than the court, whether he was justified or not in criticising Mr. Smith for presenting this bill. All the court thinks he should say to you is: If he did criticise the plaintiff in this case, he must confine himself to statements of facts that were true, or to legitimate arguments or reasons based upon a correct and true statement of the facts. It is for you to say whether he was justified in making these statements in these two articles, after considering all the circumstances shown by the evidence in this case and after considering all the language contained in both articles themselves."

It is said that these points were covered by the sixth and tenth requests, but we think not. The charge nowhere informed the jury explicitly that the village trustees were personally liable on the Michaels bill, and that for that reason the allowance of that bill was invalid, or that for the same reason the attempt to bind the city for plaintiff's services was futile. As the learned judge intimated, these questions would not be conclusive of plaintiff's right to recover, but they were facts which entered into the question, and if the jury found that the action of the council in one or both cases was valid, it is not improbable that it affected the verdict to defendant's injury.

Error is assigned upon the following language of the charge:

" One of the charges contained in the first article (I am not trying to quote the exact language, but only in a general way) charges the plaintiff, Herbert W. Smith, with perjury, and at first glance, and as I shall leave the case, you might possibly think that were true if you believe that the bill was an illegal one; but that does not necessarily follow. The bill may not have been a legal charge against the village of Imlay City—not one that the village was bound to pay as a legal proposition — and still Mr. Smith would not be guilty of perjury. Perjury is the willful making of a false statement or a false affidavit, knowing the same to be false. Now, Mr. Smith may have supposed in good faith that the bill was a legal charge against the village, and, if he did so, then it would not be perjury to swear to it, even if in truth and

in fact the village was not liable; or if he were notified or told by all the officers to present the bill as a charge against the village, so that the village could be liable in that way, why then, it would not be perjury to swear that the bill was a claim against the village. So that, gentlemen, you will bear that question in mind, carefully considering whether it has been proven whether he is guilty of perjury."

Of this defendant's counsel say:

"The error alleged in the twenty-first assignment is manifest. The village trustees, by their own neglect of duty, had made themselves personally liable for the payment of certain bills. These trustees, with the assistance of the plaintiff, proposed to relieve themselves of this liability by paying the bills out of the village treasury. The services of the plaintiff in trying to compel payment of these bills were not rendered in behalf of the village, and, if the plaintiff swore to the bill, it would be none the less perjury if he were told by the village officers to present the bill."

We do not agree with the defendant in this, as all of his premises may have been true, and yet plaintiff have been innocent of perjury.

This ruling will dispose of the alleged error in permitting the following cross-examination of the defendant, which is said to have been erroneously permitted:

"I learned, at the time the contract was entered into between the council and Hulburt & Co., that there had been no bond given. I was in the clerk's office the next day after the council meeting and saw the contract, and inquired about it of the clerk, and also Mr. Smith, who was in there at the time. I learned that they concluded that they would not have a bond. Mr. Smith said that he didn't think it was necessary to have a bond. Until after this suit was brought, I never heard that Hulburt & Co. would not take the contract as cheap as they were taking it if they were required to pay the premium on the bond. I had in mind an indemnity bond, and not the statutory one. I did not know about a bond being required by statute until several months after that.

"Q. Have you any doubt that the councilmen acted in good faith when they entered into that contract with Hul-

burt & Co.? (Objected to as immaterial, irrelevant, and incompetent. Objection overruled. Exception for defendant.)

"*A.* No, I don't know as I have any doubt. I understood that those people who had furnished material that had gone into that building had been unable to get their pay from Hulburt & Co., and that, failing to get their pay from Hulburt & Co., they had filed these claims with the village council.

"*Q.* Now, how did you suppose these people were going to get their pay, if it was not paid either by the village council or by the trustees? (Objected to as immaterial and incompetent. Objection overruled. Exception for defendant.)

"*A.* I thought their only legal way to get it was out of Hulbert & Co. or the old trustees.

"*Q.* In taking the position that you do, you drew a distinction between legal liability and moral liability, did you? (Objected to.)

"*Mr. Campbell:* One objection and exception will cover all this examination. (Objection overruled. Exception for defendant.)

"*A.* I did not consider that the village was morally liable for it.

"*Q.* Your idea was that, although the village had received the material in the construction of the building and the building stood there, an ornament to the village, and that the trustees would be obliged to pay it if the village didn't; that there was no moral liability—moral obligation—on the part of the citizens there to pay that bill for that lumber? (Objected to as incompetent. Objection overruled. Exception for defendant.)

"*A.* I felt that the village had no moral obligation to pay for it, if the village paid the contract price to Hulbert & Co."

The court also said to the jury that:

"The court instructs the jury that the charges in the articles complained of (meaning the first and second) read in your hearing are libelous per se—that is, in themselves. And if the defendant has failed to prove that the plaintiff was guilty of perjury, or of endeavoring by fraudulent means to obtain from the village treasury $69.87 for which the village of Imlay City was not responsible, or has failed to establish that the plaintiff attempted to loot the village

treasury, or that he used his position of village attorney for the purpose of exacting illegal fees from the village of Imlay City, or that he was incompetent as an attorney, or has failed to show that he is a pettifogger, or that the plaintiff misled the council by means of dishonest advice, your verdict will be for the plaintiff, because each and every one of these statements, gentlemen, enumerated in this request, are held by this court to be libelous in themselves. So that unless the defendant satisfies you that they are true, all of them true, then your verdict must of necessity be for the plaintiff of at least nominal damages. Now, do not misunderstand me, gentlemen. It would not be sufficient for the defendant to convince you that one of those charges were true. Unless he satisfies you by proof that all of them are true, then the plaintiff is entitled to a verdict at your hands, because the plaintiff might have brought suit based upon any one of these particular statements alone, instead of bringing them all before you. Each and every one of these statements that are enumerated in this request are in themselves libelous, if untrue."

There was no error in this.

The record shows that no evidence was offered to prove pecuniary loss, and defendant's counsel requested the court to charge that:

"3. As the plaintiff in his proofs has not shown any pecuniary loss to himself as the result of the alleged libel, he cannot recover any damages in respect to his property, business, or profession."

This was refused. The jury found a verdict of $400. Of this $300 was for injury to feelings and $100 for injury to character and business. It is conceded that plaintiff was not entitled to recover for damages to his business; but the record shows that upon the day that the bill of exceptions was signed, and previous thereto, the plaintiff, through his counsel, filed an offer to remit the $100 item, and consented and requested an amendment of the judgment accordingly. This paper was filed against the protest of defendant's counsel, who objected to any amendment and to the filing of the offer. No amendment was made. It is admitted that the request should have been

given, but claimed that the error was cured. We need not determine this question, as the question is unlikely to arise again.

We are constrained to reverse the judgment and order a new trial. Ordered accordingly.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.