RACHO *v.* BEACH.

1. TRUSTS—EVIDENCE—FRAUDS, STATUTE OF.
   In absence of fraud, accident, or mistake, parol testimony is inadmissible to establish trust in real estate (3 Comp. Laws 1929, § 13411).

2. SAME—EQUITY—FRAUD.
   Where title to real estate has been obtained through fraud, misrepresentation, concealment, undue influence, duress, or other similar circumstances which render it unconscionable for holder of legal title to retain property, and there are no intervening rights of *bona fide* purchasers, equity will impress constructive trust on property.

3. DEEDS—FRAUD—RECONVEYANCE—EQUITY.
   Where defendant by fraud induced plaintiff to deed real estate to him, its reconveyance was properly decreed.

Appeal from Wayne; Dehnke (Herman), J., presiding. Submitted April 22, 1931. (Docket No. 3, Calendar No. 35,369.) Decided June 1, 1931.

Degree of parol proof necessary to establish trust in real property, see annotation in 23 A. L. R. 1500 *et seq.*

Bill by Sophia Racho against Paul L. Beach for reconveyance of real estate. Decree for plaintiff. Defendant appeals. Affirmed.

*Carey J. Cole* and *Bessie M. McDonald,* for plaintiff.

*Ralph B. Clark,* for defendant.

BUTZEL, C. J. Sophia Racho, plaintiff, upon the death of her husband, became the owner of farm land that rapidly grew to be very valuable for subdivision purposes on account of its vicinity to Detroit. The property was syndicated and sold. She remained a member of the syndicate and from time to time realized large sums from it. With part of the proceeds, she purchased a tract of land not far from Detroit and having a frontage of 250 feet on Telegraph Road at the corner of Eureka Road, both paved superhighways. Three houses and a garage were erected upon the property. One house was occupied by plaintiff, the other two by her two married daughters. A son-in-law conducted the garage. Plaintiff's contentment and happiness over her material prosperity were short lived, for not only did her wealth wane, but she was overcome by far greater misfortune. Both her son Howard and son-in-law were arrested, charged with serious crimes. Howard was convicted of robbery and sentenced to a long term of imprisonment. Howard, while in jail awaiting trial, made the acquaintance of defendant, Paul L. Beach, a fellow prisoner. Plaintiff also met Beach a number of times while visiting Howard in jail. Beach was charged with having given a worthless check in order to purchase an automobile which he drove out of the State. He

was finally apprehended in El Paso, Texas, brought back to Detroit, and lodged in jail. He remained there three or four weeks before plaintiff met him. He and Howard had become friends and he seems to have made a very good impression upon plaintiff, for on March 23, 1926, shortly after meeting him, she paid the sum of $200 in order to secure a bail bond by virtue of which defendant was released from custody. Subsequently, he paid the worthless check and the charge against him was dismissed. Upon his release, he seemed at once to have ingratiated himself into plaintiff's favor, for, as she stated, she soon depended upon him to assist her in her business affairs and to take Howard's place in the management of her property.

Plaintiff is a woman of 59 years, with a very meagre education. She scarcely can read typewritten documents. She soon relied entirely upon defendant's business advice and direction, and on June 2, 1927, gave him a written power of attorney. It authorized him to look after all of her real estate and her equity in the syndicate, collect all moneys to become due her, deposit them in the bank, invest the moneys so collected, pay her taxes, bring and defend suits and act for her in such matters as might require her personal attention. The following month, on July 5, 1927, defendant, on the plea that he wanted to go on surety bonds, persuaded plaintiff to execute unto him a warranty deed to the Telegraph and Eureka Road property. Plaintiff claims that defendant told her he would deed it back any time she so requested. She produced corroborative testimony to this effect. No moneys were passed by defendant to plaintiff, nor was any document executed by him showing that he held the property in trust or that he would return it on demand. De-

fendant claims that at the time of the execution of the deed plaintiff was indebted to him in the sum of $8,000, for which he held her note; that shortly thereafter he gave her the sums of $7,100 and $3,400, both evidenced by checks signed by him. On the checks there is appropriate writing tending to show that they were given in relation to the property, and the last check indicates that it was given as the balance due on the purchase price. The two checks and note aggregate $18,500, which may be somewhat near the value of the property.

Plaintiff claims that she neither owed defendant any money whatsoever, received none from him, except several smaller sums that he had collected for her, does not remember giving a note or receiving the checks, and if she did, she simply indorsed them the same as all other documents he presented to her, and returned them to defendant; that she signed her name whenever and wherever directed by him, and that he secured the deed to the property by fraud. She filed a bill to secure a reconveyance of the property. Defendant, after securing the deed, insured the house in which plaintiff lived in his own name and recovered $4,000 insurance when the house burned down. The record is not clear as to the collection of the insurance. Possibly this is owing to the fact that it seems to have been admitted by both parties. No objection was made to the finding of the trial judge nor does defendant's attorney raise it, in the statement of the questions involved, at the beginning of his brief.

The trial judge, after listening to voluminous testimony and seeing the witnesses, entered a decree ordering a reconveyance of the property and the payment of the $4,000 insurance to plaintiff. Defendant has appealed.

The case almost exclusively involves questions of fact. We are much impressed with the opinion of the trial court and were it not for its length, we would adopt it as our own. We only mention a few of the pertinent facts.

Defendant acknowledged his previous arrests for speeding, drinking, fighting, and a subsequent arrest for giving a worthless check, and again still later, for disposing of a diamond ring to which he had no title. He had posed as an unmarried man and presented the ring to a young woman. Upon securing its return, he claims that in a fit of anger he threw the ring into the street. He also testified that he had been engaged in transporting liquor. Notwithstanding the fact that he first met plaintiff when he was in jail on account of passing a worthless check, he claims that at that time he was worth thousands of dollars represented by deposits in banks, liberty bonds in a safety deposit vault, and moneys in a safe. He, however, did not produce any bank books showing such credits or any physical proofs of ownership of a safety deposit box nor did he give any other facts that at all impress us with his claim that he had any moneys whatever. When asked why he did not pay the worthless check and thus endeavor to secure his release, he stated that he was not guilty of the crime charged; that it was agreed at the time the check was given it was to be held and not used until later; and that he preferred to remain in jail so as to increase the damages in a false imprisonment suit he proposed bringing later on. He does not show that any such suit was ever begun.

When plaintiff first met defendant, she had $14,242 on deposit in the banks. A short time later, after defendant had become her confidential agent,

she had a balance of $7 left. Although plaintiff testified she had deposited all her moneys in the banks, her bank books produced show no such sums as defendant swears he paid her. She admits going to the bank with defendant and signing her name to some papers as requested by him. Defendant also claims that plaintiff borrowed $6,500 from his mother. Were this true, plaintiff in a very few months would have spent nearly $40,000, consisting of the balances in her banks, $6,500 claimed by defendant to have been borrowed by plaintiff from his mother, and the $18,500 that defendant claims to have paid her as hereinbefore stated. There is nothing to show such expenditures. Defendant makes the claim that plaintiff does not come into court with clean hands, and that $4,000 of the amount involved or some other sums was used by the plaintiff to bribe witnesses against her son to leave the State. A receipt of such alleged witnesses was produced, but it is so indefinite in character as to be almost meaningless. In it two parties acknowledge the receipt of some moneys from plaintiff. Her signature is also attached to the receipt. In answer to her denial that she paid witnesses any sums whatsoever, defendant testified that he and plaintiff together paid the witnesses. Even were this true it would not excuse defendant's fraudulent conduct in obtaining plaintiff's property. It would appear as if some money of an indefinite amount had been paid by plaintiff, but whether she was being blackmailed or what actually happened we can not determine from the testimony.

Defendant does show that he deposited sums of $7,100 and $3,600 in his bank, but the bank statements also show that the sums of $7,100 and $3,400 were withdrawn the very same days these deposits

were made, so that the bank balance remained almost the same at the end of each of these days as they were the previous days. His bank deposit slips were not produced, nor was there any corroborative testimony produced by defendant showing that plaintiff received the moneys on the checks. Counsel for each party had previous dealings with the other party, and frequently questions were asked that had nothing to do with the issues involved. They seemed to be more in the nature of testimony given by the attorneys than answers to questions. The trial judge stated that he permitted a wide latitude in an equity suit so that he might study the character of the witnesses while the testimony was being given and also to obtain such further light as might be possible.

Defendant also claimed that plaintiff deeded the property to him because she wanted to put the property beyond the reach of her creditors on account of a suit against her arising out of an automobile accident. Plaintiff flatly denies that there is any truth in this claim. She further showed that she was protected by automobile insurance. Other minor questions were raised which we do not believe it is necessary to discuss.

The sole question of law raised is whether, in view of the fact that plaintiff admitted that she deeded the property to defendant with only an alleged verbal agreement on his part to reconvey upon request, she is precluded from demanding such reconveyance on account of the statute of frauds (3 Comp. Laws 1929, § 13411). It is true that in the absence of fraud, accident, or mistake, parol testimony is inadmissible to establish a trust in real estate. *Elson* v. *Elson*, 245 Mich. 205. However, when it is shown that title has been obtained through fraud, misrep-

resentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property, and there are no intervening rights of *bona fide* purchasers, equity will impress a constructive trust on the property and turn it over to the one to whom it rightfully belongs. *Morris* v. *Vyse,* 154 Mich. 253 (129 Am. St. Rep. 472); *Biddle* v. *Biddle,* 202 Mich. 160, 167, and cases therein cited. This rule has been frequently applied in cases of agents who take advantage of their fiduciary relationship and thus secure the property of their principal. *Moore* v. *Mandlebaum,* 8 Mich. 433; *Beedle* v. *Crane,* 91 Mich. 429; *Salliotte* v. *Dollarhite,* 211 Mich. 269, 272.

The decree in favor of plaintiff is affirmed, with costs.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.