MacKENZIE v. FRITZINGER.

1. APPEAL AND ERROR—ACCOUNTING—DE NOVO REVIEW.
A decree in a suit for accounting is reviewed *de novo* on appeal to the Supreme Court.

2. ACCOUNTING—PAROL FAMILY TRUST—EVIDENCE.
Record in accounting suit by son of deceased and his first wife against widow, deceased's second wife, *held,* to have established that no parol family trust had been created by the father while his first wife was still living, as claimed by plaintiff.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 703.
[2, 3] 1 Am Jur 2d, Accounts and Accounting § 44 *et seq.*
[4–6] 54 Am Jur, Trusts § 225 *et seq.*

3. Same — Antenuptial Agreement — Voluntary Transfers of
      Property.
      Transfers of bulk of $450,000 estate from deceased to joint ac-
        count of deceased and defendant, deceased's second wife, some
        34 years his junior at time of their marriage when he was 73,
        *held*, to have been voluntary, devoid of either fraud, coercion,
        or undue influence in suit for accounting by plaintiff, a son
        of deceased by his first wife, irrespective of whether or not
        there had been an antenuptial agreement as claimed by plain-
        tiff.

4. Principal and Agent—Constructive Trust—Fiduciaries.
      A confidential or fiduciary relationship ordinarily exists between
        principal and agent, within the meaning of the rule as to the
        raising of a constructive trust in the case of breach of such
        relationship.

5. Trusts—Constructive Trust—Fiduciary.
      Equity will raise a constructive trust and compel a fiduciary,
        who has gained something for himself which in equity and
        good conscience he should not be permitted to keep, to turn it
        over to the person equitably entitled to it, or to otherwise
        execute the trust as the court may direct.

6. Same—Constructive Trust—Evidence.
      Preponderance of evidence presented in suit for accounting against
        second wife of deceased *held*, to support establishment of con-
        structive trust as to funds defendant had been given but
        had placed in her own account without authority from her
        late husband.

Appeal from Wayne; Neuenfelt (Lila M.), J.
Submitted June 8, 1962. (Calendar No. 28, Docket
No. 48,988.) Decided May 9, 1963.

Bill by Evan Francis MacKenzie against Grace M.
Fritzinger and Frank W. Fritzinger for accounting
of property and funds obtained by defendant Grace
M. Fritzinger while the wife of Alexander Mac-
Kenzie, now deceased. Bill dismissed as to defend-
ant Frank W. Fritzinger. Decree for plaintiff di-
recting that certain corporate stocks, and cash de-
rived from dividends therefrom, be turned over to an
administrator *de bonis non,* with will annexed, of

the estate of Alexander MacKenzie, deceased. Defendant Grace M. Fritzinger appeals. Plaintiff cross-appeals asking that decree be modified to include delivery of additional securities and property. Affirmed.

*William G. Comb* and *Walter M. Nelson,* for plaintiff.

*Thomas G. Kavanagh,* for defendants.

SMITH, J.

### Parties to the action

The argument is over property accumulated in the name of Alexander MacKenzie, Sr., during his lifetime. He died May 12, 1951. Plaintiff, Evan Francis MacKenzie, is a surviving son. Defendant, Grace M. Fritzinger, was married to the deceased from December 12, 1939, until his death in 1951. Grace M. Fritzinger was the second wife of deceased. His first wife, Hattie, who was mother of the plaintiff, died in 1933. Defendant, Frank W. Fritzinger, is the present husband of Grace M. Fritzinger.

### Statement of the case

The money and property involved are of the approximate value of $450,000. This substantial accumulation started from a modest stake. For the sum of $3,800 cash, deceased purchased 40 acres at the southwest corner of what is now known as Southfield and Eight Mile roads in the city of Detroit. It was then one of the farming sections of Wayne county. The deceased moved his wife and 2 sons onto the tract where they engaged in farming and cattle raising. In 1925, the 40 acres were sold to real-estate developers, Dyer and Griffin, for the sum of $240,000,

with $44,000 as down payment. Before the developers became delinquent in their account with the deceased, they had paid approximately $120,000 of the total purchase price. During this time the tract was subdivided by the developers. Defendant Grace M. Fritzinger, a business course graduate, worked in the real-estate office of Dyer and Griffin, where she met Alexander MacKenzie, Sr., the deceased.

Several years after the death of Hattie Mac-Kenzie, Grace began keeping company with the elder MacKenzie, culminating in marriage in 1939. However, before the marriage they were sufficiently well acquainted to take several long trips together. While horseback riding with defendant Grace in November, 1939, MacKenzie was severely injured when he apparently fell from a horse. Towards the end of November he had revoked a prior will leaving his entire estate to his 2 sons. A new will was executed bequeathing the residue of his estate "in equal shares unto my fiancee, Grace M. Hessel, and unto my sons, Evan F. MacKenzie and Alexander F. MacKenzie, one-third (1/3rd) to each." A copy of said will was shown to defendant Grace before the marriage in early December. During this period, between the time of the injury and the marriage, MacKenzie, Sr., executed a deed making Grace a joint tenant with him in 8 lots, including thereon the brick house in which he made his home. Apparently, he also promised her 400 shares of Phelps Dodge stock which she admitted she later received. At the time of the marriage, she was 39 and he was 73.

After the marriage on December 12, 1939, Grace Hessel MacKenzie, now Fritzinger, assumed actual management of the business affairs of the elder Mac-Kenzie. Apparently under his general direction, she managed his dealings in banking and securities, which already had become extensive. Before marriage, Grace Fritzinger had acquired a separate

estate of approximately $15,000. The amount of property transferred during the marriage from the sole ownership of MacKenzie to the joint ownership of both husband and wife approximates $418,000 in value. During the marriage, Grace Fritzinger set up separate bank accounts and also purchased securities in her own name totaling more than $47,-000.

Plaintiff sought to establish by parol a family trust agreement, allegedly established in 1923, by the declaration of the father in the presence of the mother and 2 sons. All parties to the alleged agreement, including plaintiff's brother, are now dead (except plaintiff, of course). Plaintiff also claimed that the alleged trust was modified by an antenuptial agreement, which agreement he argues was evidenced by a new "fiancee" will, the transfer of certain lots including the home, and a promise to transfer 400 shares of Phelps Dodge stock. Defendants contend that there was no such trust or agreement.

The trial court decreed that defendant Grace Fritzinger was a "trustee of property, securities and funds placed in her own name during her marriage to Alexander MacKenzie, Sr., without any proof that the same were given to her by him." The property was ordered turned over to the administrator of the estate of Alexander MacKenzie, Sr. The court gave its reasons in an opinion and a supplemental opinion.

It is apparent from reading the 2 opinions that the trial court did not make any specific finding as to the alleged family trust agreement. By inference the court felt that no such family trust was created. However, the court found that there was an antenuptial agreement, and that as a result of it Grace Fritzinger was to receive the house and lots, the shares of Phelps Dodge stock, and a 1/3 interest in the estate. The court held that even though there may have been an antenuptial agreement, the parties

would have a right to change their minds after the marriage, and if this were done, without the presence of fraud, coercion, or undue influence, then the court would not interfere. It found that there was no proof that signatures of the elder MacKenzie on numerous transfers of stock and property were invalid, or that any fraud or duress had been practiced upon him. Further, the court found that Grace Fritzinger was the agent of her husband and that as such she took money and placed it to her own credit when rightly it should have gone into joint holdings.

## Decision

### A. Was there a family trust agreement?

In viewing the entire record *de novo,* it is our opinion that the trial court achieved the right result. In the first place, we find that under the facts and circumstances presented here no family agreement or trust was ever executed. Out of a plethora of testimony vividly portraying the MacKenzie family, its likes and dislikes, its hopes and fears, its pride, passion, and cunning, some things are clear. Of the elder MacKenzie: he was tough of body and mind; he seemed always to know what he wanted, and acted decisively to bring it about. He was familiar with the language and tools of the business world. From all the facts and circumstances it seems unlikely that he intended to create a trust. It seems more likely that he had a system of values, which he revised periodically; for example, after the death of his first wife, he made a will leaving his property to his 2 sons. Later, when Grace Fritzinger came into his life, he revised his intended disposition by making a new will.

The "fiancee" will, as plaintiff calls it, showed his intention, at that time, to divide his estate between

his 2 sons and intended wife, 1/3 each. He apparently knew that a will is ambulatory, because as the years went on he made other dispositions of property. For 1 thing, he deeded a number of valuable lots to his son, Alexander F. MacKenzie, Jr., now deceased. There is also a showing that at 1 time he diffidently suggested doing the same for plaintiff in order to placate his concern over changes in property disposition. The record otherwise also supports the conclusion, herein drawn, that the elder MacKenzie created no family trust of his property.

### B. Re: The antenuptial or "pre-nuptial" agreement

The trial court found that an antenuptial agreement was made between the elder MacKenzie and his then intended wife, Grace Hessel. As already mentioned, the trial court rested its finding mainly upon the transactions between the parties within the month prior to the marriage. Plaintiff claims that these transactions evidence a modification of what he calls the "family trust agreement." We have already found that there was no such agreement. It is not crucial to this decision, however, to determine whether or not an antenuptial agreement was in fact made. The results are the same, because whatever may have been the understanding between the parties it was grossly modified during their marriage. What is more, there is no claim of failure by Grace Fritzinger to carry out her end of the agreement, if any. What were her obligations under the so-called "pre-nuptial" agreement are not clear. There is no claim that she was to forfeit dower rights nor any other interest in the MacKenzie properties. The individual transactions constituting the alleged antenuptial agreement, that is to say, the transfer of the home and lots, the making of a

new will, and the promise and subsequent transfer of 400 shares of Phelps Dodge stock are not attacked here. We find no reason to question the power of the elder MacKenzie so to dispose of his property. Further, we agree with the trial court that there is no proof that the elder MacKenzie was not competent to execute the numerous documents resettling the bulk of his estate upon Grace MacKenzie, now Fritzinger. Also, we concur in the trial court's finding that there is no proof of fraud, insofar as it pertains to the transfer of the bulk of the estate over the 11 years of married life from sole to joint ownership. The transfers appear to have been made voluntarily, devoid of either fraud, coercion, or undue influence.

### C. Finding as to constructive trust

Finally, we are brought to the holding of the trial court that the property diverted to accounts in her own name during her marriage were in violation of the agency relationship defendant, Grace Fritzinger, bore to her deceased husband and that a constructive trust should be imposed upon same. In 22 Michigan Law and Practice, Trusts, § 53, p 570, the law is summed up as follows:

"A confidential or fiduciary relationship ordinarily exists between principal and agent, within the meaning of the rule as to the raising of a constructive trust in the case of a breach of such relationship. Accordingly, where a person occupies a fiduciary relationship as agent for another, and thereby gains something for himself which in equity and good conscience he should not be permitted to keep, equity will raise a constructive trust and compel him to turn it over to the person equitably entitled to it, or to otherwise execute the trust as the court may direct." Citing, *Burton* v. *Burton*, 332 Mich 326; *Mackey* v. *Baker*, 327 Mich 57; *Stephenson* v. *Golden*, 279 Mich

493 and 710; *Wales* v. *Newbould,* 9 Mich 45; and *Moor* v. *Mandlebaum,* 8 Mich 433.

Although the burden of proof is on the person seeking to establish a constructive trust, a preponderance of proof is all that is necessary to establish it. The evidence shows conclusively that the elder MacKenzie undertook to provide handsomely for his wife, Grace, by transferring large amounts of property (estimated: $418,000) from his sole name to their joint ownership. The testimony of Grace Fritzinger about the origin of her separate purchases is much less than satisfactory, as the trial court notes vigorously. The trial court said: "Her own testimony was that Mr. MacKenzie gave her no money to put in her own account." We cannot say that defendant Grace Fritzinger rebutted the presumption of invalidity arising out of the fiduciary relationship. On the contrary, the proofs preponderate in the other direction. We conclude therefore that the decree should be affirmed.

Affirmed, with costs to plaintiff-appellee and cross-appellant.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

O'HARA, J., took no part in the decision of this case.