KAMMER ASPHALT PAVING CO, INC v EAST CHINA
TOWNSHIP SCHOOLS

Docket No. 93937. Argued May 4, 1993 (Calendar No. 3). Decided
    August 3, 1993.

    Kammer Asphalt Paving Co., Inc., and other subcontractors of
    Dougherty Construction, Inc., brought separate actions in the
    St. Clair Circuit Court against the East China Township
    Schools and others, seeking payment for work performed on the
    construction and renovation of the district's athletic facilities.
    The district had disbursed progress payments to Dougherty
    Construction as general contractor, but when Dougherty failed
    to pay the subcontractors, it assured them that a payment bond
    furnished by Dougherty pursuant to the public works act
    protected their interests. The district subsequently discovered
    that the bond was invalid and unenforceable, but did not
    inform the subcontractors. The subcontractors first became
    aware of the status of the bond when the district issued a
    notice of termination to Dougherty.

    The court, James T. Corden, J., consolidated the cases, and
    granted summary disposition for the district, finding no legal
    duty for governmental units to ensure the validity of payment
    bonds, thereby foreclosing the subcontractors' negligence claim.
    It further found that the subcontractors' unjust enrichment,
    constructive trust, and breach of contract to a third-party
    beneficiary claims were insupportable. The Court of Appeals,
    CAVANAGH, P.J., and CONNOR and R. J. SNOW, JJ., affirmed in
    an unpublished opinion per curiam (Docket No. 126596). Kam-
    mer appeals.

    In an opinion by Justice RILEY, joined by Justices LEVIN,
    BRICKLEY, BOYLE, and MALLETT, the Supreme Court held:

    A governmental unit has a duty to verify the validity of a
    payment bond furnished by a general contractor of a public
    works project.

    1. MCL 129.208; MSA 5.2321(8) provides that when a govern-
    ment entity provides a certified copy of a payment bond at the

REFERENCES
Am Jur 2d, Contractors' Bonds § 58.
See ALR Index under Contractors' Bonds.

request of a subcontractor, it verifies the validity of the bond, i.e., the risk of the invalidity of such a bond is on the government entity. In this case, the plaintiff requested and was provided copies of the payment bond almost a year before the termination of the project. At that time, the district certified that the bond was properly executed. The plaintiff, thus, is entitled to proceed in negligence because the district's provision of the certified copies was prima facie evidence that the bond was valid, and the defendant is liable for damages resulting from its failure to verify its validity.

2. Because the district failed to notify the plaintiff of the fraudulent nature of the bond, after it had assured the plaintiff that the bond would secure its interest, a reasonable mind could find that the district was unjustly enriched. Thus, the plaintiff must be permitted to go forward in equity for its claim of damages that arose after the certification of the bond and the district's verbal assurances of the plaintiff's protection by it.

3. A constructive trust may be imposed where necessary to do equity or to prevent unjust enrichment. It may not be imposed upon parties who in no way have contributed to the reasons for imposing it. Examining the evidence in the light most favorable to the plaintiff, the district verbally assured the plaintiff that it was protected by the bond and certified its validity when it provided certified copies. The plaintiff should be permitted to prove at trial that it would not have continued construction without relying upon this representation, and thus that the district received the benefit of the plaintiff's labor and that a constructive trust was established.

4. The plaintiff may not recover as a third-party beneficiary as defined by MCL 600.1405; MSA 27A.1405 because the district was the promisee of the bonds, not the promisor. Further, the contract between the district and Dougherty did not contain promises on behalf of the plaintiff; rather, it specifically excluded any contractual relationship with a subcontractor. At best, the plaintiff is an incidental beneficiary of the general contract.

Affirmed in part and reversed in part.

Chief Justice CAVANAGH, joined by Justice GRIFFIN, concurring in part and dissenting in part, stated that the public works act does not impose a duty on a contracting governmental unit to verify the validity of a payment bond furnished by the general contractor of a public works project. Thus, the plaintiff failed to state a cause of action in negligence.

The district performed its obligations under the general

contract by paying the entire contract price. It was the general contractor who absconded with the funds and failed to compensate the plaintiff. The district cannot be held liable on a theory of unjust enrichment for Dougherty's failure to perform its obligations to the plaintiff under a subcontract. For the same reasons, the plaintiff's constructive trust theory must fail.

SCHOOLS — PUBLIC WORKS PROJECTS — PAYMENT BONDS — LIABILITY
    TOWARD SUBCONTRACTORS.
    A governmental unit has a duty to verify the validity of a
    payment bond furnished by a general contractor of a public
    works project (MCL 129.201 et seq.; MSA 5.2321[1] et seq.).

*Mager, Monahan, Donaldson & Alber, P.C.* (by *Lita Masini Popke* and *Lawrence M. Scott*), for the plaintiff.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo* and *Gordon W. Van Wieren, Jr.*), for the defendant.

RILEY, J. Because we find that MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.* imposes upon a governmental unit[1] the duty to verify the validity of a payment bond furnished by a general contractor of a public works project, we reverse the Court of Appeals affirmance of summary disposition with regard to plaintiff's negligence count. Similarly, because we find that defendant may have inequitably received the benefit of plaintiff's labor and materials, we reverse the Court of Appeals affirmance of summary disposition with regard to plaintiff's unjust enrichment and constructive trust counts. Finally, we affirm the Court of Appeals affirmance of summary disposition with regard to the third-party beneficiary count because plaintiff is not a third party within the meaning of MCL 600.1405; MSA 27A.1405.

---

[1] To avoid confusion, this opinion will utilize the terms governmental unit or entity to encompass not only the contracting governmental unit but also its representatives.

I

Because plaintiff's complaint was dismissed on summary disposition, we view the facts in the light most favorable to plaintiff. *Stevens v McLouth Steel Products Corp,* 433 Mich 365, 370; 446 NW2d 95 (1989).

On April 23, 1987, defendant, East China Township Schools, entered into a general construction contract with a general contractor, Dougherty Construction, Inc., for the construction and renovation of athletic facilities in the district.[2] As required by the public works act,[3] Dougherty furnished defendant a performance bond[4] and a payment bond.[5] The bonds were standard, preprinted, American Institute of Architects forms, with the name of the surety, American Seaboard Indemnity & Insurance Company of Peachtree City, Georgia, printed across the top of each bond.

Dougherty entered into a contract with plaintiff, subcontractor Kammer Asphalt Paving Co, for certain base and paving work. In consideration of plaintiff's services, Dougherty agreed to pay Kammer $217,906. In October of 1987, plaintiff notified Dougherty, as well as the school district, of its intended performance and its reliance upon the payment bond.

In accordance with the general contract, the project's architect, DiGeronimo Associates, disbursed progress payments to Dougherty as the project advanced. Dougherty, however, was not as

---

[2] The contract price, adjusted for additional work and change orders, was $1,504,195.36.

[3] MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.*

[4] A performance bond assures completion of a project in the event of default by the general contractor. This type of bond protects the owner of the property.

[5] A payment bond assures payment to subcontractors who furnish supplies, labor, or equipment.

consistent in paying the project's subcontractors. When various subcontractors, including plaintiff, repeatedly expressed concern over Dougherty's failure to compensate them, defendant, DiGeronimo, and Dougherty all indicated that they need not worry because the payment bond protected the subcontractors' interest.

On August 15, 1988, defendant discovered that the furnished bonds were invalid and unenforceable—American Seaboard Indemnity & Insurance Company did not exist. Dougherty ignored defendant's subsequent demands for valid bonds. On October 21, 1988, defendant issued a notice of termination to Dougherty because of its failure to furnish the required bonds, at which time plaintiff first became aware of the fraudulent nature of the bonds.

Defendant then filed suit in St. Clair Circuit Court against Dougherty Contractors and William Dougherty. In a separate action, plaintiff filed suit against Dougherty, DiGeronimo, defendant, and various members of the East China School Board. Four other subcontractors separately filed similar actions. In response to defendant's motion, the trial court consolidated the subcontractors' five separate suits with defendant's action against Dougherty.

Following consolidation of the lawsuits, defendant filed a countercomplaint and third-party complaint for interpleader, naming all of Dougherty's subcontractors as parties. Defendant sought to deposit the remaining contract funds[6] with the trial court for a determination regarding its proper distribution. Defendant proposed that the

---

[6] The total general contract price was $1,504,195.36. Before terminating the general contract, defendant disbursed $1,224,370.80 to Dougherty, leaving $279,824.56 remaining.

fund first be applied to pay for completion of the project, with any remaining funds to be distributed to the unpaid subcontractors on a pro-rata basis.[7]

On March 16, 1989, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10) with regard to the subcontractors' claims against the school district. The circuit court granted defendant's motion, finding no legal duty for governmental units to ensure the validity of the bonds, which foreclosed the subcontractors' negligence claim.[8] Furthermore, the court found that the subcontractors' unjust enrichment, constructive trust, and breach of contract to a third-party beneficiary claims were unsupportable. The Court of Appeals affirmed in an unpublished per curiam opinion. This Court granted plaintiff's application for leave to appeal on December 8, 1992.[9] 441 Mich 894.

II

Because materialmen and contractors may not obtain a mechanics' lien on a public building,[10] the Legislature requires the posting of performance and payment bonds by a general contractor before construction on a public building may commence.

[7] In a separate proceeding, the trial court implemented defendant's proposed plan. As a result of the interpleader action, plaintiff received $37,923.64, reducing the amount owed it to $140,000.

[8] The plaintiff's challenge, regarding its negligence claim, focuses solely on the potential statutory duty delegated by the public works act. Plaintiff has not alleged that defendant acted in a manner that would require application of an exception to the doctrine of governmental immunity. See *Richardson v Jackson Co,* 432 Mich 377, 387, n 11; 443 NW2d 105 (1989); *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). We will not address this issue because it is not properly before the Court.

[9] The other subcontractors did not appeal the Court of Appeals holding, therefore, they are not parties to the instant appeal.

[10] See *Knapp v Swaney,* 56 Mich 345, 347; 23 NW 162 (1885); *Ford v State Bd of Ed,* 166 Mich 658, 660; 132 NW 467 (1911).

MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.*[11] Payment bonds are "solely for the protection of claimants . . . supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in the contract." MCL 129.203; MSA 5.2321(3).[12] The bond, therefore, must be "executed by a surety company authorized to do business in the state." MCL 129.204; MSA 5.2321(4). The Legislature further protects subcontractors by mandating that public units provide subcontractors a certified copy of a submitted bond if they submit an affidavit that they are unpaid for services or materials. MCL 129.208; MSA 5.2321(8). Furthermore, such a certified copy "shall be prima facie evidence of the contents, execution, and delivery of the original." *Id.*[13]

The Court of Appeals, relying on prior author-

---

[11] The Court of Appeals has explained:

> The necessity for providing some means of protecting contractors, subcontractors, laborers, or materialmen, who perform labor or furnish materials for improvement of real property has been recognized in this state prior to the time that it was a state. See 2 Territorial Laws 331 (1827). . . .
>
> To [fulfill] the state's basic policy to protect laborers and materialmen in construction work contracts . . . the Legislature adopted the forerunner of [MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.*]. The purpose of that statute was to provide protection in the construction of public buildings where protection is not afforded by the mechanics' lien law . . . . [*Milbrand Co v Dep't of Social Services*, 117 Mich App 437, 440; 324 NW2d 41 (1982).]

See also *Adamo Equipment Rental Co v Mack Development Co, Inc*, 122 Mich App 233, 236; 333 NW2d 40 (1982).

[12] MCL 129.206; MSA 5.2321(6) defines "claimant" to include subcontractors such as plaintiff. MCL 129.207; MSA 5.2321(7) outlines the procedure by which a claimant may recover funds under a payment bond.

[13] MCL 129.203; MSA 5.2321(3), however, mandates that payment bonds need only be posted "in an amount fixed by the governmental unit but not less than twenty-five percent of the contract amount . . . ."

ity,[14] held that "[t]here is no duty imposed on the contracting governmental unit to insure that payment bonds are kept current or to warn subcontractors or material suppliers of the expiration of a bond."[15] The Court, therefore, granted defendant's motion for summary disposition with regard to the negligence count.[16]

The dissent, however, fails to examine the current statute as a whole. "In every exposition of a statute, the intention of the Legislature is undoubtedly the end to be sought . . . ." *Leoni Twp v Taylor,* 20 Mich 148, 154-155 (1870). Thus, when legislative intent is clearly revealed in an unambiguous statute, the plain language of the statute must be enforced. *Farm Products Co v Jordan,* 229 Mich 235, 239; 201 NW 198 (1924). Nevertheless, because "a clause which, standing by itself, might seem of doubtful import, may yet be made plain by comparison with other clauses or portions of the same law," a fundamental principle of statutory interpretation is that "the whole is to be examined with a view to arriving at the true intention of each part . . . ." 1 Cooley, Constitutional Limitations (8th ed), p 127.[17] If judicial construction is necessary, the Court must discern the Legislature's intent by examining "the object of the statute, the harm which it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose." *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989).

[14] *Fischer v City of Negaunee,* unpublished opinion per curiam of the Court of Appeals, decided June 9, 1989 (Docket No. 109102).

[15] Unpublished opinion per curiam of the Court of Appeals, decided April 28, 1992 (Docket No. 126596), p 2.

[16] *Id.*

[17] See also *Collins v Secretary of State,* 384 Mich 656, 666; 187 NW2d 423 (1971); *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420, 426; 102 NW2d 584 (1960).

Utilizing these principles, an examination of MCL 129.208; MSA 5.2321(8) reveals that it unambiguously provides that a government entity verifies the validity of a payment bond when it provides a certified copy of the bond at the request of a subcontractor.[18] In the instant case, therefore, the statute imposes the risk of the invalidity of such bonds upon the government entity.[19] This interpretation of the statute is aligned with its avowed purpose to protect subcontractors in the absence of mechanics' liens for public works. Furthermore, the statute's requirements that the bond be submitted to the government entity,[20] the bond be executed by a validly licensed company,[21] and filed in the office of the government entity,[22] all strongly confirm that the statute imposes upon the government entity the duty to verify the validity of such bonds.[23] To hold otherwise would be to

[18] The dissent suggests that the language simply permits a subcontractor to "verify the validity of the payment bond furnished," *post* at 201, but MCL 129.208; MSA 5.2321(8) provides that the certified copy is "prima facie evidence of the contents, execution, and delivery of the original." If the statute was simply furnishing a mechanism for verification of the existence of a bond, it would not mandate that the certified copy was prima facie evidence of its execution and delivery, but would merely ensure that a copy be provided.

[19] On the other hand, if plaintiff had never requested the copies, then it would possess no recourse because the risk of the invalidity would not have been imposed upon defendant. This is a sensible reading of the statute. After nonpayment by a general contractor, if subcontractors are willing to work without at least requesting copies of the bonds, then they assume the risk that no bonds (or invalid bonds) exist. If, however, subcontractors do take steps to ensure a bond exists, MCL 129.208; MSA 5.2321(8) permits subcontractors to presume that the bonds are filed and validly executed.

[20] MCL 129.201; MSA 5.2321(1).

[21] MCL 129.204; MSA 5.2321(4).

[22] MCL 129.205; MSA 5.2321(5).

[23] After noting that MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.* fails to include language from its predecessor, enacted by 1905 PA 187 and codified at MCL 570.101 *et seq.*; MSA 26.321 *et seq.*, that explicitly provided that "it shall be the duty of the board of officers or agents, contracting on behalf of the [governmental unit], to require sufficient security by bond," the dissent concludes that the current statute does

render the statutory requirement of payment bonds meaningless.

In the instant case, plaintiff requested and was provided copies of the bonds nearly a year before the termination of the project, at which time defendant certified that the bonds were properly executed. Plaintiff, therefore, is entitled to proceed on the negligence count because defendant's provision of the certified copies was prima facie evidence that the bonds were valid, and defendant is liable for the resulting damages stemming from its failure to verify the bonds' validity.[24]

### III

Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement Restitution, § 1, p 12. The remedy is one by which "the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received" to ensure that " 'exact

not impose a statutory duty "to verify the validity of the payment bond furnished by a general contractor of a public works project." *Post* at 201. Not only does the dissent fail to examine the current statute as a whole, its heavy reliance upon legislative history is misguided. The Legislature's failure to provide explicitly for a duty to ensure the validity of the bonds is not controlling. First, the predecessor statute was entirely replaced by the current act. Contrary to the assertions of the dissent, the Legislature did not "remove the words imposing such a duty," *post* at 193, but enacted a wholly different statutory framework to supersede the predecessor statute. As acknowledged by the dissent, "the former statute was repealed and 1963 PA 213 [was] enacted in its place . . . ." *Post* at 194, n 4. Second, the reforms appear to be focused upon eliminating individual liability for the breach of the duty in question. Third, the language, purpose, and structure of the statute reveal that such a duty was intended to exist.

[24] In the instant case, the extent of damages is limited to the facial value of the invalid bond. If no bond existed, then damages would be limited to "25% of the contract amount . . . ." MCL 129.203; MSA 5.2321(3).

justice' " is obtained. *Detroit v Highland Park,* 326
Mich 78, 100; 39 NW2d 325 (1949), quoting *Casca-den v Magryta,* 247 Mich 267, 270; 225 NW 511
(1929). Because this doctrine vitiates normal con-
tract principles, the courts "employ the fiction
with caution, and will never permit it in cases
where contracts, implied in fact, must be estab-
lished, or substitute one promisor or debtor for
another." In the instant case, the Court of Appeals
held that summary disposition was correct with
regard to this count because "even though the
School District received a benefit from the subcon-
tractors, it is not unjust under the circumstances
that the benefit be retained."[25] Viewing the facts in
the light most favorable to plaintiff, if reasonable
minds could differ over the legal conclusion of the
instant case, summary disposition was inappropri-
ate. *DiFranco v Pickard,* 427 Mich 32, 54; 398
NW2d 896 (1986).

A

The Court of Appeals analysis must be rejected
because defendant failed to notify plaintiff of the
fraudulent nature of the bonds after it had as-
sured plaintiff the bonds would secure its interests.
Defendant was aware over a year before the termi-
nation of the contract that Dougherty was failing
to compensate plaintiff and other subcontractors,
and plaintiff repeatedly informed defendant of its
reliance upon the bonds to secure compensation.
Indeed, defendant indicated that there was no
need to worry because the payment bond protected
the subcontractors' interest. However, defendant
knew for approximately seventy-five days that the
bonds were fraudulent, and never notified plaintiff
until after it terminated its contract with Dough-

[25] Slip op, p 2.

erty. Standing alone, these facts sufficiently support a claim of unjust enrichment. Furthermore, as soon as difficulties arose—nearly a year before the termination of the contract—defendant verified the validity of the bonds by supplying plaintiff with certified copies of the bonds. In these circumstances, regardless of its fulfillment of the contract to the general contractor, once defendant possessed actual knowledge of the invalidity of the bonds and failed to inform plaintiff, reasonable minds could find that defendant was unjustly enriched. Cf. *City of Ingleside v Stewart,* 554 SW2d 939, 945 (Tex Civ App, 1977).[26]

B

Whether defendant was unjustly enriched before actual knowledge of the invalidity of the bonds is a closer issue. Although plaintiff indirectly provided defendant a benefit, its contract was with Dougherty, and the benefit it provided was in exchange for compensation. The risk of nonpayment could be understood to rest with plaintiff.[27] Moreover, defendant paid the general contractor $1.3 million

[26] [T]he record clearly reflects that the City was aware that contractor Smith did not have a bond and chose to allow him to continue under his contract. It is entirely reasonable for a subcontractor to assume that the governmental agency, in executing a construction contract . . . will follow the law and require the general contractor to provide a bond. However, if such governmental agency should choose not to require the bond, then it should also not be heard to claim that a subcontractor's only remedy for nonpayment is against the general contractor on the bond it did not require and that it knew he did not have.

Contrary to the assertions of the dissent, this analysis is independent of the status of the governmental entity, i.e., the city need not step into the shoes of the general contractor to be held liable for its failure to ensure a validly executed bond protects the subcontractors.

[27] See *Michigan Ass'n of Psychotherapy Clinics v Blue Cross & Blue Shield of Michigan (After Remand),* 118 Mich App 505, 518; 325 NW2d 471 (1982).

for the work performed. Plaintiff, however, was permitted to assume the submitted bonds were valid once it received copies of the bonds, and defendant repeatedly assured plaintiff of payment because of the bonds. Hence, equity demands plaintiff be permitted to go forward with this count for those damages that arose after certification of the bonds and verbal assurances of protection by the bonds were given by defendant.

## IV

A constructive trust may be imposed "where such trust is necessary to do equity or to prevent unjust enrichment . . . ." *Ooley v Collins,* 344 Mich 148, 158; 73 NW2d 464 (1955). Hence, such a trust may be imposed when property " 'has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property . . . .' " *Potter v Lindsay,* 337 Mich 404, 411; 60 NW2d 133 (1953), quoting *Racho v Beach,* 254 Mich 600, 606-607; 236 NW 875 (1931).[28] Accordingly, it may not be imposed upon parties "who have in no way contributed to the reasons for imposing a constructive trust." *Ooley, supra* at 158. The burden of proof is upon the person seeking the imposition of such a trust. *MacKenzie v Fritzinger,* 370 Mich 284; 121 NW2d 410 (1963). The Court of Appeals held that plaintiff failed to allege sufficient facts necessary to establish such a cause of action.[29]

---

[28] See also *Grasman v Jelsema,* 70 Mich App 745, 752; 246 NW2d 322 (1976) ("[a] constructive trust may be based upon a breach of fiduciary or confidential relationship, misrepresentation, concealment, mistake, undue influence, duress or fraud").

[29] Slip op, p 2.

Plaintiff alleges that defendant " 'mis-represented' the existence of a payment bond to satisfy subcontractor claims." Examining the evidence in the light most favorable to plaintiff, defendant verbally assured plaintiff that it was protected by the bonds and certified their validity when it provided certified copies of them. Plaintiff may prove at trial that it would not have continued construction without relying upon this representation. If so, defendant received the benefit of plaintiff's labor, and a constructive trust could have been established. Hence, the Court of Appeals decision is reversed with regard to this count.

V

Plaintiff further suggests that the Court of Appeals erred in denying its third-party beneficiary claim. MCL 600.1405; MSA 27A.1405 defines third-party beneficiaries and the rights they possess:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

The Court must objectively determine "from the form and meaning of the contract itself" whether a party is a third-party beneficiary as defined in MCL 600.1405; MSA 27A.1405. *Guardian Depositors Corp v Brown,* 290 Mich 433, 437; 287 NW 798 (1939).

In the instant case, plaintiff may not recover as a third-party beneficiary because defendant was the promisee of the bonds, not the promisor. The contract between Dougherty and defendant did not contain promises on behalf of plaintiff. In fact, contract provision 1.1.2 explicitly states that "[n]othing contained in the Contract Documents shall create any contractual relationship between the Owner or the Architect and any Subcontractor or Sub-subcontractor." Quite simply, "plaintiff is asserting the claim against the wrong party." *Reed & Noyce, Inc v Muni Contractors, Inc,* 106 Mich App 113, 119; 308 NW2d 445 (1981).

At best, plaintiff is an incidental beneficiary of the general contract. As noted by this Court in *Greenlees v Owen Ames Kimball Co,* 340 Mich 670, 676; 66 NW2d 227 (1954), plaintiff has no remedy under the contract between Dougherty and defendant:

> "An incidental beneficiary has no rights under the contract. A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach."

The Court of Appeals dismissal of the third-party beneficiary claim, therefore, is affirmed.

VI

Because we find that MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.* imposes upon a governmental unit the duty to verify the validity of a payment bond furnished by a general contractor of a public

works project, we reverse the Court of Appeals affirmance of summary disposition with regard to plaintiff's negligence count. Similarly, because we find that defendant may have inequitably received the benefit of plaintiff's labor and materials, we reverse the Court of Appeals affirmance of summary disposition with regard to plaintiff's unjust enrichment and constructive trust counts. Finally, we affirm the Court of Appeals affirmance of summary disposition with regard to the third-party beneficiary count because plaintiff is not a third party within the meaning of MCL 600.1405; MSA 27A.1405.

LEVIN, BRICKLEY, BOYLE, and MALLETT, JJ., concurred with RILEY, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). I concur with the majority's conclusion that the trial court properly granted summary disposition with regard to the third-party beneficiary count. I write separately, however, because I dissent from the majority's holding that the public works act[1] imposes upon a contracting governmental unit the duty to verify the validity of payment bonds. Furthermore, I would hold that the trial judge properly granted the defendant's motion for summary disposition with regard to the plaintiff's negligence, unjust enrichment, and constructive trust claims.

I

The majority's holding is contrary to the history of the public works act, the clear and unambiguous directives of the entire act, as well as federal case law interpreting similar legislation.

[1] MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.*

A

An early version of the public works act explicitly imposed a duty on a contracting governmental unit to require payment bonds:

When public buildings or other public works are about to be built, repaired or ornamented under contract at the expense of the State, or of any county, city, village, township or school district thereof, *it shall be the duty of the board of officers or agents, contracting on behalf of the State, county, city, village, township or school district, to require sufficient security by bond for the payment by the contractor of all subcontractors and for the payment for all labor performed and materials furnished* in the erection, repairing or ornamenting of such building or works. [1905 PA 187, § 1, MCL 570.101; MSA 26.321. Emphasis added.]

Accordingly, this Court held that a governmental unit is liable to subcontractors for damages incurred because of the government's failure to require a payment bond for a public project. "[A] total failure to require such bond is such a breach of duty as authorizes an action by the party injured against members of the board or municipal body in their individual capacity." *Alpena v Title Guaranty & Surety Co,* 158 Mich 678, 680; 123 NW 536 (1909). *Smith v Hubbel,* 142 Mich 637, 644-645; 106 NW 547 (1906).[2]

The statute, as presently enacted, however, does not impose a duty on a governmental unit:

---

[2] See also *Wells v West Bay City Bd of Ed,* 78 Mich 260; 44 NW 267 (1889), *Plummer v Kennedy,* 72 Mich 295; 40 NW 433 (1888), and *Owen v Hill,* 67 Mich 43; 34 NW 649 (1887). Similarly, under an earlier version of the public works act, 1883 PA 94, this Court recognized the Legislature's explicit command to impose a duty. "It will be noticed that the duty to require the bond is specifically imposed in all cases falling within the purview of the statute." *Owen* at 46.

> Before any contract, exceeding $50,000.00 for the construction, alteration, or repair of any public building or public work or improvement of the state or a county, city, village, township, school district, public educational institution, other political subdivision, public authority, or public agency hereinafter referred to as the "governmental unit," is awarded, the proposed contractor, hereinafter referred to as the "principal contractor," *shall furnish at his or her own cost to the governmental unit a performance bond and a payment bond* which shall become binding upon the award of the contract to the principal contractor. . . . [MCL 129.201; MSA 5.2321(1). Emphasis added.]

If the Legislature had not been concerned with alleviating the statutory duty imposed on a governmental unit contracting for a public project, then there would have been no need to remove the words imposing such a duty. While we are not privy to the Legislature's reasons for excluding the language that imposed the duty, such a change facilitates the public policy favoring individual involvement in public service, while simultaneously providing a remedy for unpaid subcontractors.[3] Regardless of the Legislature's motives, the clear effect of the change is apparent:

> [T]he mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights. . . . This is a rule peculiar to amendments and other

---

[3] The subcontractor's remedy is not illusory because the public works act provides a method under which the subcontractor can confirm the existence of the remedy. The subcontractor can verify the validity of the furnished payment bond after receiving a certified copy of the payment bond from the governmental unit pursuant to MCL 129.208; MSA 5.2321(8).

acts purporting to change the existing statutory law. [1A Sands, Sutherland Statutory Construction (4th ed), § 22.30, p 265.][4]

It is obvious that the Legislature was aware of the explicit statutory duty imposed on a governmental unit contracting for the construction or improvement of a public project. It is equally apparent that the Legislature was aware of this Court's line of cases imposing the statutory mandate. Armed with this knowledge, the Legislature excluded the language from the public works act that imposed the duty on a governmental unit to require the necessary bonds. Accordingly, we must give effect to its action.

Furthermore, the clear language of the statute supports the conclusion that the statute no longer imposes a duty on a governmental unit to require a bond.[5] The statute, as presently enacted, requires the general contractor to furnish to the governmental unit payment and performance bonds. The statute clearly and unambiguously delegates the duty to the general contractor, not the government unit. "If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary." *Dussia*

---

[4] While the majority is correct that the former statute was repealed and 1963 PA 213 enacted in its place, the rules of statutory construction with regards to amendments are instructive because the new act deals with the identical subject matter as the former act.

[5] [S]tatutes requiring payment bonds should be liberally construed as regards the classes of labor, materials, and supplies covered, and it has been held that liberal construction of the procedural provisions must be resorted to when necessary to effect that purpose. Notwithstanding the rule of liberal construction applied to some provisions of payment bond statutes, where there is explicit language that is clear and unambiguous, the statute must be applied and not interpreted. [17 Am Jur 2d, Contractors' Bonds, § 55, p 789. Citations omitted.]

*v Monroe Co Employees Retirement System,* 386
Mich 244, 248; 191 NW2d 307 (1971). "It is a
cardinal rule that the legislature must be held to
intend the meaning which it has plainly expressed,
and in such cases there is no room for construc-
tion, or attempted interpretation to vary such
meaning." *MacQueen v Port Huron City Comm,*
194 Mich 328, 342; 160 NW 627 (1916). We cannot
and should not impose a duty on a governmental
unit absent an expressed statutory directive to do
so.[6] *Knapp v Swaney,* 56 Mich 345, 347; 23 NW
162 (1885). The majority's imposition of such a
duty is repugnant to traditional notions of govern-
mental immunity. See *Benson v State Hosp Comm,*
316 Mich 66, 73; 25 NW2d 112 (1946).

B

The majority's holding is also contrary to federal
case law applying the federal counterpart of the
public works act, the Miller Act.[7] Federal prece-
dent applying the Miller Act, while not control-
ling, is instructive because of the similarities be-
tween the two acts and because the Michigan
statute is modeled after the Miller Act. *Pi-Con, Inc
v A J Anderson Construction Co,* 435 Mich 375,
381; 458 NW2d 639 (1990). In *Arvanis v Noslo
Engineering Consultants, Inc,* 739 F2d 1287 (CA 7,
1984), the general contractor of a federal public
works project failed to furnish a payment bond as

---

[6] An examination of the entire statute supports this conclusion. The
public works act explicitly states the duties imposed on a government
unit: MCL 129.202; MSA 5.2321(2), "The performance bond shall be in
an amount fixed by the government unit . . . ." MCL 129.203; MSA
5.2321(3), "The payment bond shall be in an amount fixed by the
government unit . . . ." MCL 129.208; MSA 5.2321(8), "The agent in
charge of the office of the governmental unit shall furnish to anyone
making an application . . . a certified copy of the bond."

[7] 40 USC 270(a) *et seq.*

required by the Miller Act.[8] Subcontractors sought compensation from the government after the general contractor declared bankruptcy. The subcontractors, similar to the plaintiff at bar, claimed that the government was negligent in failing to require the general contractor to post a payment bond.

Realizing that a party cannot be liable in negligence absent a duty to act, the United States Court of Appeals for the Seventh Circuit inquired into whether the Miller Act imposed a duty on the government to require a payment bond. The court, on the basis of the clear directives of the statute, answered unequivocally that it did not.

> The statute requires only that contractors obtain performance and payment bonds. The statute places no affirmative obligation on the government, and says absolutely nothing about when the contractor fails to furnish the bond. The Act grants a very narrow and specific position: the right to sue on the bond (if there happens to be one) . . . . [*Id.* at 1290.]

While the court acknowledged that there was a gap in the statute, it recognized that it could provide no remedy—"especially in view of the very narrow remedy actually granted by the statute."[9] *Id.*

---

[8] Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, *such person shall furnish to the United States* the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor." [40 USC 270(a). Emphasis added.]

[9] Accord *United States v Smith,* 324 F2d 622 (CA 5, 1963); *United States v Tac Construction Co, Inc,* 760 F Supp 590 (SD Miss, 1991); *Shore Contractors, Inc v Heatherly,* 705 F Supp 293 (ED Va, 1987); *4-Star Construction Corp v United States,* 6 Cl Ct 271 (1984); *Baudier Marine Electronics, Sales & Service, Inc v United States,* 6 Cl Ct 246 (1984).

Similar to its federal counterpart, the public works act provides a narrow, specific remedy to subcontractors who supply labor and materials for public projects. "A claimant . . . may sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon." MCL 129.207; MSA 5.2321(7). The public works act does not place an affirmative obligation on a contracting governmental unit to either require or verify a valid payment bond.

Having found no statutory duty for governmental units to require or verify the validity of a payment bond, I would affirm the trial court's holding that the plaintiff failed to state a cause of action in negligence.[10]

II

The majority holds that the trial court improperly dismissed the plaintiff's claims of unjust enrichment and constructive trust. When reviewing orders granting a party's motion for summary judgment, the Court must view the evidence in a light most favorable to the opposing party. If reasonable minds could disagree regarding the conclusions to be drawn from the facts, the order granting summary judgment must be reversed. If, however, reasonable minds could not disagree, the order of summary disposition must be affirmed. *DiFranco v Pickard,* 427 Mich 32, 54; 398 NW2d 896 (1986).

---

[10] In order to support an action for negligence, the defendant must owe a legal duty to the plaintiff. *Buczkowski v McKay,* 441 Mich 96; 490 NW2d 330 (1992).

A

The plaintiff readily admits that neither an express contract nor a contract implied in fact between the plaintiff and the defendant existed. The plaintiff asks this Court, however, to imply a contract in law in order to prevent the defendant from being unjustly enriched to the detriment of the plaintiff.

When a party is unjustly enriched, the law generally requires the benefited party to provide restitution for the benefit received. Courts often employ the legal fiction of a contract implied in law or *quasi* contract to justify payment where no contract exists. *Detroit v Highland Park,* 326 Mich 78, 100; 39 NW2d 325 (1949). To recover under this theory the plaintiff must show that the defendant received a benefit from the plaintiff and that it would be unjust for the defendant to retain that benefit. *Buell v Orion State Bank,* 327 Mich 43, 56; 41 NW2d 472 (1950). We must be cautious in applying this doctrine, however, because the mere fact that a benefit has been conveyed does not necessarily indicate that it is unjust for the party to retain that benefit.

> Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor. [Restatement Restitution, § 1, comment c, p 13.]

It is undisputed that the plaintiff bestowed a benefit to the defendant through the paving work completed on the project. However, it is not unjust

for the defendant to retain the benefit because the
defendant paid the entire contract amount. While
it is true that the general contractor absconded
with the contract funds and failed to compensate
the plaintiff, this does not render unjust the ben-
efit the defendant received. The defendant per-
formed its obligations under the general contract
by paying the entire contract price. The defendant
cannot be held liable under an unjust enrichment
theory for Dougherty's failure to perform its obli-
gations owed to the plaintiff under the subcon-
tract.[11]

---

[11] The majority refers to *City of Ingleside v Stewart,* 554 SW2d 939
(Tex Civ App, 1977), as support for its conclusion that the trial court
improperly dismissed the plaintiff's unjust enrichment claim. *Ante,* p
187. Chief Judge Nye, the author of the *Stewart* opinion, explained
the parameters of *Stewart* in *Corpus Christi v Acme Mechanical
Contractors,* 736 SW2d 894, 899 (Tex App, 1987):

> In effect, this Court held that a subcontractor who was able
> to prove that the City had "stepped into the shoes of the
> general contractor and chose to supervise and finish the job and
> pay some of the laborers and subcontractors," was liable to the
> subcontractor on the theory of quantum meruit.

The facts that compelled the *Stewart* court to impose liability on the
city on the basis of quantum meruit are distinguishable in several
respects. The general contractor in *Stewart* failed to post the statuto-
rily mandated bonds upon the advice of the city's architect. Further-
more, "there was other evidence that the City impliedly agreed to pay
the appellee [subcontractor] for its work."

> The trial court specifically found and the evidence supports
> such findings that the City initiated a dual payee system [each
> check drawn from the construction project's fund was made out
> to the general contractor and the subcontractor to be paid] and
> took over the job when the contractor overspent his withdraw-
> als. The record showed that the City assumed and undertook
> the duties of the general contractor and paid the laborers and
> subcontractors. [*Stewart* at 944.]

The case at bar does not present a factual situation warranting a
determination of unjust enrichment. The school district did not step
into the shoes of the general contractor, nor did it act in such a
manner that would allow the plaintiff to infer that the school district
would pay the subcontractors for their services.

B

Similarly, the plaintiff's request for the imposition of a constructive trust on the amount of the contract fund not paid to Dougherty must fail. Like a contract implied in law or *quasi* contract, a constructive trust is imposed as a remedy to prevent unjust enrichment.[12]

> The constructive trust, as it was put by Mr. Justice Cardozo, "is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not, in good conscience, retain the beneficial interest, equity converts him into a trustee." [*Kent v Klein,* 352 Mich 652, 656; 91 NW2d 11 (1958). Citation omitted.]

The remedy of a constructive trust will be imposed when it is inequitable under the circumstances[13] to allow one to retain property.

The plaintiff's constructive trust theory must fail for the same reason the unjust enrichment claim failed: the defendant has not been unjustly

---

[12] [A] quasi-contractual obligation and a constructive trust closely resemble each other, the chief difference being that the plaintiff in bringing an action to enforce a quasi-contractual obligation seeks to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money, whereas the plaintiff in bringing a suit to enforce a constructive trust seeks to recover specific property. [Restatement Restitution, § 160, comment a, p 642.]

[13] A constructive trust need not arise because the property was wrongfully acquired, it may arise out of unconscionability and unjust enrichment. A constructive trust may be based upon a breach of fiduciary or confidential relationship, misrepresentation, concealment, mistake, undue influence, duress or fraud. [*Grasman v Jelsema,* 70 Mich App 745, 752; 246 NW2d 322 (1976).]

enriched. Furthermore, the interpleader action renders this claim moot because the defendant is no longer in possession of the remaining contract funds. If the plaintiff claims error in the way the funds were distributed in the interpleader action or somehow alleges a greater priority than other subcontractors, then the plaintiff's proper avenue of redress is to appeal the result of this interpleader action.[14]

### III

The public works act does not impose a statutory duty on a contracting governmental unit to verify the validity of the payment bond furnished by a general contractor of a public works project. Absent a duty owed to the plaintiffs, the plaintiffs cannot maintain an action in negligence. Furthermore, the trial court properly dismissed the plaintiffs' claims of unjust enrichment, constructive trust, and breach of contract to a third-party beneficiary.

Accordingly, I would affirm the judgment of the Court of Appeals.

Griffin, J., concurred with Cavanagh, C.J.

[14] The majority fails to recognize that the plaintiff agreed to the disbursement: "Following an unsuccessful appeal to the Court of Appeals, the subcontractors and the School District agreed upon a distribution of the interpleader funds which were then disbursed. The interpleader action was dismissed."